### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GPI, LLC,<br><br>          Plaintiff,<br><br>   v.<br><br>RAPSYS INCORPORATED d/b/a<br>GEESE POLICE OF NAPERVILLE; and<br>VIDMANTAS RAPSYS,<br><br>          Defendants. | Civil Action No. 2:22-cv-4585 |

### MEMORANDUM OF LAW IN SUPPORT OF
### APPLICATION FOR ORDER TO SHOW CAUSE WHY
### PRELIMINARY INJUNCTION SHOULD NOT ISSUE

**TABLE OF CONTENTS**

I.   STATEMENT OF FACTS ............................................................................1

II.  STANDARD FOR ISSUANCE OF PRELIMINARY INJUNCTION ...........3

III. ARGUMENT.......................................................................................3

    A.   Franchisor Is Likely to Succeed on the Merits of its Lanham Act and New Jersey Breach of Contract Claims ...............................................3

        1.   Counts I & II:  The Lanham Act Claims for Trademark and Service Mark Infringement and Unfair Competition..................4

        2.   Count III: Breach of Franchisee Agreement Claim for Violations of Covenant Not to Compete....................................6

    B.   Franchisor Will Suffer Irreparable Harm Without Injunction Relief ...7

    C.   Significant Injury to Franchisor Outweighs Any Harm to Defendants 9

    D.   Franchisors' Requested Injunctive Relief is in the Public Interest.....10

IV. CONCLUSION ......................................................................................11

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Home Prod. Corp. v. Johnson Chem. Co.*,
589 F.2d 103 (2d Cir. 1978) ...............................................................9

*Housemaster SPV LLC, v. John T. Burke, Jr.*,
No. CV2113411MASTJB, 2022 WL 2373874 (D.N.J. June 30,
2022) .......................................................................................7, 8, 9, 10

*Interpace Corp. v. Lapp, Inc.*,
721 F.2d 460 (3d Cir. 1983) ...............................................................5

*Issa v. Sch. Dist. of Lancaster*,
847 F.3d 121 (3d Cir. 2017) ...........................................................10, 11

*Mallet & Co. Inc. v. Lacayo*,
16 F.4th 364 (3d Cir. 2021) ...............................................................3, 4

*Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck
Consumer Pharms. Co.*,
290 F.3d 578 (3d. Cir. 2002) ...............................................................3

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*,
920 F.2d 187 (3d Cir. 1990) ...............................................................5

*Prime Hookah Inc. v. FCM Online LLC*,
No. 2:21-CV-13915 (WJM), 2022 WL 1115361 (D.N.J. Apr. 14,
2022) ...............................................................................................4

*Richardson v. Cascade Skating Rink*,
No. CV 19-8935-NLH-MJS, 2022 WL 833319 (D.N.J. Mar. 21,
2022) .......................................................................................7, 8, 9

*Wyndham Hotels & Resorts, LLC v. Welcome Hotel Grp. LLC*,
No. CV174065ESJAD, 2021 WL 1100610 (D.N.J. Mar. 23, 2021)...............4, 5

**Statutes**

15 U.S.C. § 1057(b) ...............................................................................4

15 U.S.C. § 1114 .................................................................................................4

15 U.S.C. § 1125(a) ...........................................................................................4

Lanham Act Section 32 .......................................................................................4

Lanham Act Section 43(a) ...................................................................................4

## Other Authorities

4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:20
   (5th ed.) ........................................................................................................5

Plaintiff GPI, LLC ("Franchisor") files this Memorandum of Law in Support of its Application for Order to Show Cause Why Preliminary Injunction Should Not Issue to Defendants Rapsys Incorporated d/b/a Geese Police® of Naperville ("Defendant Rapsys"); and Vidmantas Rapsys ("Defendant Vidmantas" and together with Defendant Rapsys, the "Defendants") for their immediate compliance with their post-termination obligations under the Franchise Agreement.[1]

## I.    STATEMENT OF FACTS

For over twenty years, Franchisor has been continuously engaged in the franchising of a franchise system consisting of distinctive formats, designs, specifications, methods, standards, operating procedures and guidance for Canadian goose/bird control franchises, which use highly trained working border collies to herd Canadian geese off a client's property in a waterfowl-friendly manner (the "Franchised Business").  *See* Compl., ¶ 9.  With waterfowl protective statutes in place, the practices employed by the Franchised Business are one of the few means of dealing with messy Canadian geese in a lawful manner.  *Id.*

Since the Franchisor began franchising in 1998, Franchisor has licensed the Geese Police Marks to its franchisees for use in specific geographic areas for the term of their franchise.  *Id.*, ¶ 21.  Franchisor also grants its franchisees the right to

---

[1] Capitalized terms used in this Brief without definition have the same meanings given to them in the Verified Complaint.

enjoy the benefits of using the Geese Police System and the Geese Police Trade Secrets. *Id.* Franchisees are not, however, authorized to use the Geese Police Marks, the Geese Police System or the Geese Police Trade Secrets following the expiration or termination of their franchises. *Id.*, ¶ 22.

Defendants have been a franchisee since 1998. *Id.*, ¶¶ 4, 26. Franchisor entered into a five year Franchise Agreement with Defendants on or about February 13, 2009. *Id.* Defendant Vidmantas, as the owner of Defendant Rapsys, executed the Franchise Agreement and also executed a Guarantee, Indemnification, and Acknowledgement under which he personally guaranteed that the obligations of Defendant Rapsys under the Franchise Agreement would be performed, and acknowledged and agreed, among other things, to be bound by the franchisee's obligations upon termination and to the covenant not to compete. *Id.*, ¶ 29. Defendants operated as an authorized franchisee of Plaintiff GPI for twenty-four years in the Approved Location of Naperville, Illinois and in the Protected Territory using the Geese Police Marks, the Geese Police System and the Geese Police System. *Id.*, ¶ 33.

On June 24, 2022, Franchisor terminated the Franchise Agreement and the Geese Police franchise under which Defendants were operating because Defendants defaulted on numerous obligations under the Franchise Agreement. *Id.*, ¶¶ 37-41. Although the Franchise Agreement has been terminated, Defendants still continue

2

to violate their post-termination obligations under the Franchise Agreement, and will continue to do, absent Court involvement. *Id.*, ¶¶ 42-45.

## II.    STANDARD FOR ISSUANCE OF PRELIMINARY INJUNCTION

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions.  In the Third Circuit, a preliminary injunction will issue when (1) the movant has shown a likelihood that it will succeed on the merits; (2) the movant would be irreparably harmed without injunctive relief; (3) the potential harm to the movant outweighs the harm the defendant may suffer should an injunction issue; and (4) granting preliminary relief would be in the public interest. *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d. Cir. 2002).

## III.    ARGUMENT

### A.    Franchisor Is Likely to Succeed on the Merits of its Lanham Act and New Jersey Breach of Contract Claims

To establish a likelihood of success on the merits, a movant must show that "there is a reasonable chance, or probability, of winning." *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 380 (3d Cir. 2021) (citation omitted).  "That does not require a more-likely-than-not showing of success on the merits," but rather only "require[s] the plaintiff to demonstrate that it *can* win on the merits." *Id.* (emphasis in original).  And this "involves a showing that its chances of establishing each of the elements

3

of the claim are significantly better than negligible." *Id.* The Franchisor easily meets that threshold requirement here.

### 1.   Counts I & II:  The Lanham Act Claims for Trademark and Service Mark Infringement and Unfair Competition

Franchisor can win on the merits of its claim for trademark and service mark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114, at Count I; and for unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) at Count II.  Both claims require a plaintiff to establish that: "(1) their marks are valid and legally protectable; (2) they own the marks; and (3) defendants' use of their marks to identify goods or services is likely to create confusion concerning the origin of the goods or service." *Prime Hookah Inc. v. FCM Online LLC*, No. 2:21-CV-13915 (WJM), 2022 WL 1115361, at *2 (D.N.J. Apr. 14, 2022) (citations omitted).  Each element is met in the Verified Complaint.

"The first two elements are satisfied by registration and ownership of the relevant trademarks."  *Wyndham Hotels & Resorts, LLC v. Welcome Hotel Grp. LLC*, No. CV174065ESJAD, 2021 WL 1100610, at *6 (D.N.J. Mar. 23, 2021); *see also* 15 U.S.C. § 1057(b) (certificate of registration is prima facie evidence of validity of registered mark).  As set forth in the Verified Complaint, the Geese Police Marks have all been registered United States Patent and Trademark Office and licensed by Franchisor for use in the Franchised Business. *See* Compl., ¶¶ 9-17.  No dispute therefore exists as to the ownership and validity of the marks.

4

Franchisor likewise satisfies the third element of likelihood of confusion through its former franchisee's continued use of its exact marks.  While the Third Circuit has established ten non-exhaustive factors when analyzing likelihood of confusion, *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983), it has also held that "likelihood of confusion is inevitable, when, as in this case, the identical mark is used concurrently by unrelated entities," *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990).[2]  This Court has likewise explained that it "need not conduct a detailed analysis under each *Lapp* factor" so long as the Complaint "alleges that, based on [Defendants'] failure to remove the [at-issue] Marks after termination of the [Franchise] Agreement, the allegedly infringed marks are Plaintiff's exact marks."  *Wyndham Hotels & Resorts*, LLC, 2021 WL 1100610, at *6.  Here, again, the allegations in the Verified Complaint are sufficient to show Defendants' continued use of the Geese Police Marks after termination of the Franchise Agreement.  *See* Compl., ¶¶ 47-48.

In short, because of the incontestable ownership and validity of the marks, along with the inevitable finding of likelihood of confusion from Defendants' unauthorized use since the termination of the Franchise Agreement, Franchisor has

---

[2] *See also* 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:20 (5th ed.) ("Cases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports.  Such cases are 'open and shut' and do not involve protracted litigation to determine liability for trademark infringement.").

5

met its burden of showing a probability of success on the merits of its claims for trademark and service mark infringement and unfair competition.

### 2. Count III: Breach of Franchisee Agreement Claim for Violations of Covenant Not to Compete

Franchisor can also prevail on the merits of its claim for Breach of the Franchise Agreement for Defendants' ongoing violations of the Covenant Not to Compete. Upon its termination, the Franchise Agreement bars Defendants, for a period of two years, either directly or indirectly owning, maintaining, operating, engaging in, being employed by, providing assistance to, or having any interest in (as an owner or otherwise) any business that:

> (i) offers products or services which are the same as or similar to the products and services offered by the Franchised Business under the System; and (ii) is, or is intended to be, located at or within: [1] the county or municipality in which the Approved Location is located; or [2] the Protected Territory; or [3] one hundred fifty (150) miles of the Approved Location; or [4] one hundred fifty (150) miles of any business operating under the Proprietary Marks; provided, however, that this provision shall not apply to the operation by Franchisee of any business under the System which may be franchised by Franchisor to Franchisee.

Compl., ¶ 50. This narrowly-drawn covenant is enforceable here against Defendants on a preliminary injunction.

Under New Jersey law, "noncompete covenants in franchise agreements are often viewed like agreements ancillary to the sale of a business in that the franchisee is in a more equitable bargaining situation than the typical employer-employee

6

relationship." *Housemaster SPV LLC, v. John T. Burke, Jr.*, No. CV2113411MASTJB, 2022 WL 2373874, at *6 (D.N.J. June 30, 2022). This means that courts "are more likely to find the covenants reasonable and valid" because "the primary characteristic of a franchise is the license given to the franchisee to trade upon and exploit the franchisor's good will." *Id.* Indeed, New Jersey courts have found a likelihood of success on the merits in a restrictive covenant by a franchisor where, as here, a former franchisee continues to operate after termination. *See id.*

The Verified Complaint establishes that Defendants still operate the Franchised Business in the same Protected Territory (the Illinois – North of Bloomington area) using the Franchisor's Geese Police Marks, the Geese Police System, and the Geese Police Trade Secrets. Defendants also still hold themselves out as affiliated with the Franchisor, including on the internet and in their phone answering service. As this Court has explained, "[f]or the purposes of a preliminary injunction, the analysis of the merits prong ends there." *Id.* Franchisor has met the element of likelihood of success on the merits for a preliminary injunction to issue.

### B.     Franchisor Will Suffer Irreparable Harm Without Injunction Relief

For the irreparable harm factor, a plaintiff "must demonstrate that s/he will, in the absence of an injunction, experience immediate harm that cannot adequately be compensated after the fact by monetary damages." *Richardson v. Cascade Skating*

7

*Rink*, No. CV 19-8935-NLH-MJS, 2022 WL 833319, at *4 (D.N.J. Mar. 21, 2022) (citation omitted).  Franchisor again meets this requirement here.

Grounds for finding irreparable injury include "loss of control of reputation, loss of trade, and loss of good will." *Id.* (citation omitted).  A finding of irreparable injury may "also be based on likely confusion." *Id.*  Courts in this District have therefore found adequate grounds for irreparable harm based on confusion itself between the Plaintiff's trademark and Defendants' misuse because that "goes to the issues of Plaintiff's reputation and others' good will, which can be otherwise virtually impossible to capture in terms of monetary relief." *Richardson v. Cascade Skating Rink*, No. CV 19-8935-NLH-MJS, 2022 WL 833319, at *5 (D.N.J. Mar. 21, 2022).  Irreparable harm has similarly been found when a former franchisee still accessed customer lists and performed in and near his old territory for nearly a year after termination, which deteriorated the Franchisor's goodwill, diverted customers away, caused customer confusion, and hindered its ability to refranchise the territory. *Housemaster*, 2022 WL 2373874, at *6.

A finding of irreparable harm in this case is similarly warranted.  Despite their post-termination obligations under the Franchise Agreement, Defendants have actively competed against Franchisor in the Protected Territory without impunity. And, making matters worse, Defendants are doing so by trading on the reputation and goodwill of the Franchisor, including through its unauthorized use of the Geese

Police Marks, the Geese Police System, and the Geese Police Trade Secrets. Absent injunctive relief, Franchisor's will lose any ability to control and enforce the Franchised Business' operations, standards, and procedures in the Protected Territory, and its customers will be deceived into believing that Defendants' business is an authorized Geese Police franchise when, in fact, it is not. This ultimately endangers the satisfaction and expectations of Franchisor's customers, dilutes the value of the franchises held by other franchisees, and inevitably leads to the loss of reputation associated with the Geese Police Marks. For these reasons, the record "demonstrates a clear likelihood of irreparable harm satisfying the second element for injunctive relief." *Id.*

### C. Significant Injury to Franchisor Outweighs Any Harm to Defendants

In addition to the first two "gateway factors," a balancing of hardships also supports Franchisor's preliminary injunction. As this Court has explained, "the balance of hardships weighs strongly in favor of an injunction where all that is requested is that Defendant comply with the law and abstain from infringing." *Richardson*, 2022 WL 833319, at *5; *see also Am. Home Prod. Corp. v. Johnson Chem. Co.*, 589 F.2d 103, 107 (2d Cir. 1978) ("[O]ne who adopts the mark of another for similar goods acts at his own peril.").

Absent injunctive relief, Franchisor will suffer considerable hardship through injury to its goodwill, lost customers in the Protected Territory, and an inability to

9

successfully refranchise its former region.  *Housemaster*, 2022 WL 2373874, at *6.

Defendants, by contrast, only need to cease its operations within the Protected

Territory and abstain from further use of the Geese Police Marks, Geese Police

System, or the Geese Police Trade Secrets, as Defendants agreed upon in the

Franchise Agreement.  This minimal harm that Defendants wrought on themselves

(after warning) pales in comparison to the irreparable injury to Franchisor's ongoing

loss of goodwill, and at any rate, the "harm which follows a defendant who willfully

breaches a contractual undertaking is not a basis for denying a preliminary

injunction."  *Housemaster*, 2022 WL 2373874, at *6.  A preliminary injunction

should therefore issue for Franchisor to protect against further acts of infringement

by Defendants, as well as against continued breaches of their post-termination

obligations, including the temporary prohibition against competition.

### D.    Franchisors' Requested Injunctive Relief is in the Public Interest

At the last step, "courts that find in favor of a preliminary injunction on the

first three factors will [typically] find an injunction is also in furtherance of the

public interest."  *Housemaster*, 2022 WL 2373874, at *10; *see also Issa v. Sch. Dist.

of Lancaster*, 847 F.3d 121, 143 (3d Cir. 2017) ("If a plaintiff proves both a

likelihood of success on the merits and irreparable injury, it almost always will be

the case that the public interest favors preliminary relief.").  This is such a case:

"there is public interest in preventing deception or confusion in the marketplace," as

10

well as in enforcing legitimate and reasonable contractual clauses. *Id.* For these reasons, the issuance of an injunction is in furtherance of the public interest.

## IV.   CONCLUSION

For the foregoing reasons, Franchisor respectfully request that the Court grant a preliminary injunction against Defendants.

Respectfully submitted,

*s/* Melissa J. Bayly
Melissa J. Bayly
Buchanan Ingersoll & Rooney PC
550 Broad Street
Suite 810
Newark, NJ 07102-4582
973 424 5604 (o)
melissa.bayly@bipc.com

Gretchen L. Jankowski
(*pro hac vice forthcoming)*
Matthew C. Pilsner
(*pro hac vice forthcoming*)
Buchanan Ingersoll & Rooney PC
Union Trust Building
501 Grant Street, Suite, 200
Pittsburgh, PA 15219

*Attorneys for Plaintiff GPI, LLC*

11