# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

GPI, LLC,

            Plaintiff,

    v.

RAPSYS INCORPORATED d/b/a
GEESE POLICE OF NAPERVILLE;
and VIDMANTAS RAPSYS,

            Defendants.

Civil Action No. 3:22-cv-4585

---

## BRIEF IN SUPPORT OF PLAINTIFF GPI LLC'S MOTION FOR A PERMANENT INJUNCTION

---

Melissa J. Bayly
Buchanan Ingersoll & Rooney PC
550 Broad Street, Suite 810
Newark, NJ 07102-4582
973 424 5604 (o)
melissa.bayly@bipc.com

Gretchen L. Jankowski
(*admitted pro hac vice*)
Matthew C. Pilsner
(*admitted pro hac vice*)
Buchanan Ingersoll & Rooney PC
Union Trust Building
501 Grant Street, Suite, 200
Pittsburgh, PA 15219

*Attorneys for Plaintiff GPI, LLC*

## TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ..........................................................................................1

II. STATEMENT OF FACTS ...........................................................................1

    A.    GPI Spends Considerable Time, Effort, Resources, and Funds Developing the Geese Police Marks and System.................................1

    B.    Defendants Become a Franchisee and Agree to be Bound by a Franchise Agreement...................................................................................4

    C.    Defendants Received the Benefits of a Franchisee While Operating as Geese Police of Naperville for Decades .........................6

    D.    GPI Terminated the Franchise Agreement Because of Defendants' Numerous Defaults .........................................................7

    E.    Defendants Failed to Comply with the Franchise Agreement's Post-Termination Obligations ...............................................................9

    F.    Defendants Failed to Comply with the Franchise Agreement's Covenant Not to Compete..................................................................10

    G.    Defendants Have Caused Customer Confusion and Led the Franchisee Revolt .................................................................................11

III. STANDARD OF REVIEW .......................................................................12

IV. ARGUMENT..............................................................................................13

    A.    GPI is Entitled to a Permanent Injunction Prohibiting Defendants from Again Using the Geese Police Marks ....................13

        1.    Defendants Committed Trademark and Service Mark Infringement and Engaged in Unfair Competition ..................13

            (a)    GPI Has Shown Validity and Ownership of the Geese Police Marks .......................................................14

            (b)    GPI Has Shown Confusion Through Defendants' Use of the Geese Police Marks.......................................15

i

2.  GPI Meets the Requirements for a Permanent Injunction to Enjoin Defendants from Further Violations of the Lanham Act ................................................................16

    (a)  GPI Has Suffered Irreparable Injury .............................17

    (b)  Monetary Damages are Inadequate to Compensate for GPI's Injury................................................................18

    (c)  The Balance of Hardships Favors GPI ...........................19

    (d)  The Public Interest Would Not Be Disserved by a Permanent Injunction......................................................20

B.  GPI Is Entitled to a Permanent Injunction Enforcing the Franchise Agreement's Restrictive Covenant and Remaining Post-Termination Obligations ...............................................................21

    1.  Defendants Have Breached the Franchise Agreement ............21

    (a)  Defendants Breached the Franchise Agreement's Restrictive Covenant......................................................22

        (i)  The Franchise Agreement remained a valid contract through May 2022 ..................................22

        (ii)  The Franchise Agreement's restrictive covenant is enforceable ........................................27

        (iii)  Defendants breached the restrictive covenant......30

        (iv)  GPI suffered harm from the breach......................31

    (b)  Defendants Breached Their Remaining Post-Termination Obligation ..................................................32

    2.  The Court Should Grant Plaintiff a Permanent Injunction Requiring Defendants to Comply with their Obligations Under Sections 15 and 16 of the Franchise Agreement ..........35

    (a)  Plaintiff Has Suffered Irreparable Injury........................36

    (b)  Monetary Damages are Inadequate to Compensate for GPI's Injury................................................................36

       (c)    The Balance of Hardships Favors GPI ...........................37

       (d)    The Public Interest Would Not be Disserved by a
                Permanent Injunction......................................................37

    3.    The Permanent Injunction Enforcing the Restrictive
         Covenant Should Run from the Date of Entry of the
         Injunction ..................................................................38

V.    CONCLUSION.............................................................40

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A & H Sportswear Co. v. Victoria's Secret Stores, Inc.*,
    166 F.3d 197 (3d Cir. 1999) ...............................................................................13

*AAMCO Transmissions, Inc. v. Dunlap*,
    646 F. App'x 182 (3d Cir. 2016) ......................................................................19

*Am. Bridal & Prom Indus. Ass'n v. 2016dressforprom.Com*,
    Civ. No. 16-08272, 2017 WL 4154934 .......................................................19, 20

*Am. Home Prod. Corp. v. Johnson Chem. Co.*,
    589 F.2d 103 (2d Cir. 1978) ..............................................................................20

*Arch Pers. Care Prod., L.P. v. Malmstrom*,
    90 F. App'x 17 (3d Cir. 2003) ...........................................................................28

*Armstrong Paint & Varnish Works v. Nu-Enamel Corp.*,
    305 U.S. 315 (1938).............................................................................................14

*Bad Ass Coffee Co. of Hawaii v. JH Nterprises, L.L.C.*,
    636 F. Supp. 2d 1237 (D. Utah 2009)...........................................................31, 38

*Bill Blass, Ltd. v. SAZ Corp.*,
    751 F.2d 152 (3d Cir. 1984) ..............................................................................20

*Can't Live Without It, LLC v. Closeout Surplus & Salvage, Inc.*,
    No. 18-14606, 2021 WL 1345869 (D.N.J. Apr. 9, 2021) ..................................19

*Chanel, Inc. v. Matos*,
    133 F. Supp. 3d 678 (D.N.J. 2015)................................................................13, 16

*Cosmetic Warriors Ltd. v. Nailush LLC*,
    No. 17-1475 (RBK/JS), 2017 WL 5157390 (D.N.J. Nov. 6, 2017)...................21

*CrossFit, Inc. v. 2XR Fit Sys., LLC*,
    No. CIV. 2:13-1108 KM, 2014 WL 972158 (D.N.J. Mar. 11, 2014) ..........18, 19

*Delta Air Lines, Inc. v. Fly Tech, LLC*,
    No. 16-2599, 2018 WL 1535231 (D.N.J. Mar. 29, 2018) .............................18, 20

*Donut Holdings, Inc. v. Risberg*,
    885 N.W.2d 670 (Neb. 2016) ............................................................................23

*Dunkin Donuts, Inc. v. All Madina Corp*.,
    No. CIV.A. 04-1399(JAG), 2006 WL 842403 (D.N.J. Mar. 28,
    2006) ................................................................................................................13

*Gafnea v. Pasquale Food Co., Inc*.,
    454 So. 2d 1366 (Ala. 1984)............................................................................22

*In re Gingrich*,
    No. CIV.A. 09-1898 CCC, 2011 WL 6001347 (D.N.J. Nov. 30,
    2011) ................................................................................................................23

*Goldfarb v. Solimine*,
    245 A.3d 570 (N.J. 2021) ................................................................................21

*Housemaster SPV LLC, v. John T. Burke, Jr*.,
    No. CV2113411MASTJB, 2022 WL 2373874 (D.N.J. June 30,
    2022) ........................................................................................................*passim*

*Intelliga Commc'ns, Inc. v. Ferrari N. Am., Inc.*,
    No. CV 15-2315 (SRC), 2016 WL 916680 (D.N.J. Mar. 9, 2016) ...................23

*Interpace Corp. v. Lapp, Inc.*,
    721 F.2d 460 (3d Cir. 1983) ............................................................................15

*Jackson Hewitt Inc. v. Childress*,
    No. CIVA 06-CV-0909 DMC, 2008 WL 834386 (D.N.J. Mar. 27,
    2008) ................................................................................................................38

*Jackson Hewitt, Inc. v. DJSG Utah Tax Serv., LLC*,
    2013 WL 2459887 (D.N.J. June 6, 2013).........................................................38

*Jackson Hewitt, Inc. v. Dupree-Roberts*,
    No. 13-00388, 2013 WL 4039021 (D.N.J. Aug. 7, 2013)..................................35

*Jobconnection Servs., Inc. v. Munoz*,
    No. 2:13-3901, 2015 WL 3440842 (D.N.J. May 28, 2015) ...............................35

*JTH Tax LLC v. Pierce*,
    2022 WL 4122215 (N.D. Ga. Sept. 8, 2022).................................................23, 24

*Lawn Doctor, Inc. v. Rizzo*,
    No. 12-1430 (TJB), 2012 WL 6156228 (D.N.J. Dec. 11, 2012)......27, 28, 29, 30

*Lermer Germany GmbH v. Lermer Corp.*,
    94 F.3d 1575 (Fed. Cir. 1996) ...................................................................16

*Malibu Media, LLC v. Toshi Yamada*,
    No. CV171183ESJAD, 2019 WL 1586813 (D.N.J. Apr. 12, 2019) .................19

*Menasha Packaging Co., LLC v. Pratt Indus., Inc.*,
    No. CV 17-0075, 2017 WL 639634 (D.N.J. Feb. 15, 2017) .............................38

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*,
    920 F.2d 187 (3d Cir. 1990) .....................................................................15

*Piquante Brands Intern., Ltd. v. Chloe Foods Corp.*,
    2009 WL 1687484 (D.N.J. June 16, 2009).....................................................16

*Prime Hookah Inc. v. FCM Online LLC*,
    No. 2:21-CV-13915 (WJM), 2022 WL 1115361 (D.N.J. Apr. 14,
    2022) .....................................................................................................14, 18

*Quizno's Corp. v. Kampendahl*,
    No. 01 C 6433, 2002 WL 1012997 (N.D. Ill. May 20, 2002) ...........................31

*Richardson v. Cascade Skating Rink*,
    No. CV 19-8935-NLH-MJS, 2022 WL 833319 (D.N.J. Mar. 21,
    2022) .....................................................................................................17, 20

*Sandhills Glob., Inc. v. Garafola*,
    No. 19-20669, 2020 WL 7029482 (D.N.J. Nov. 30, 2020) (Shipp,
    J.)...........................................................................................................28, 29

*Solari Indus., Inc. v. Malady*,
    264 A.2d 53 (N.J. 1970) ...........................................................................27

*Wyndham Hotels & Resorts, LLC v. Welcome Hotel Grp. LLC*,
    No. CV174065ESJAD, 2021 WL 1100610 (D.N.J. Mar. 23, 2021)............14, 15

**Statutes**

15 U.S.C. § 1057(b) ...................................................................................14

15 U.S.C. § 1114 ..................................................................................... 13

15 U.S.C. § 1116(a) ............................................................................... 16

15 U.S.C. § 1125(a)(1)(A) ....................................................................... 13

**Other Authorities**

62B Am. Jur. 2d Private Franchise Contracts § 322 ................................. 22

J. Thomas McCarthy, Trademarks & Unfair Competition § 30:1 (4th
    ed. 2006) ............................................................................................. 16

## I.   INTRODUCTION

This case is extraordinarily straightforward and easily decided.  Defendants have duly admitted to being a holdover franchisee—bound by the same terms and conditions in their Franchise Agreement—as well as to violating their post-termination obligations.   A permanent injunction should therefore be entered, following the hearing that Plaintiff GPI, LLC ("GPI" or "Franchisor") has requested, to (1) enjoin Rapsys Incorporated ("Rapsys") and Vidmantas Rapsys ("Vid," and together with Rapsys, "Defendants") from again using GPI's trademarks; (2) enforce the restrictive covenant in the Franchise Agreement; and (3) require Defendants to comply with their remaining post-termination obligations in the Agreement.

## II.   STATEMENT OF FACTS

### A.   GPI Spends Considerable Time, Effort, Resources, and Funds Developing the Geese Police Marks and System

For over twenty years, GPI has been the franchisor of a franchised system for Canadian goose/bird control, which uses highly trained working border collies to herd Canadian geese off a client's property in a waterfowl-friendly manner.  Ex. 1, Verified Compl., ¶ 9.[1]   GPI currently has nearly a dozen franchisees licensed throughout the United States.  Ex. 2, GPI 30(b)(6) Dep. Tr. (J. Brown) at 49:7-25.

---

[1] All exhibits referenced herein are attached to the Declaration of Melissa J. Bayly, which has been filed along with the Motion for Permanent Injunction and this Memorandum of Law in Support.

GPI's primary trademark and service mark is the composite of the words GEESE POLICE® and the design as shown below:



Ex. 2, GPI 30(b)(6) Dep. Tr. (J. Brown) at 50:3-13.  The composite service mark shown above was registered by Geese Police, Inc., an affiliate of Franchisor through common ownership, under U.S. Registration No. 2,378,757 on or about August 22, 2000 (the "Composite Mark"), and it remains valid and enforceable.  Ex. 3, Verified Compl., Ex. A, USPTO Trademark Electronic Search Results.  Since August 22, 2000, Geese Police, Inc. has permitted GPI to license the Composite Mark for use in its Franchised Business, and GPI has continuously used the Composite Mark as its trademark and service mark.  Ex. 1, Verified Compl., ¶ 13.

Under the same arrangement with Geese Police, Inc., GPI also uses two additional trademarks and service marks.  Ex. 1, Verified Compl., ¶ 14.  The trademark and service mark CALL US TO . . . GET THE FLOCK OUT!® was registered by Geese Police, Inc. under U.S. Registration No. 2,680,858 on January 28, 2003, and it remains valid and enforceable.  Ex. 4, Verified Compl., Ex. B,

UPSTO Trademark Electronic Search Results.  The trademark and service mark GEESE POLICE® was registered by Geese Police, Inc. under U.S. Registration No. 3,257,763 on July 3, 2007, and it also remains valid and enforceable.  Ex. 5, Verified Compl., Ex. C, UPSTO Trademark Electronic Search Results.  These two Marks, along with the Composite Mark, are collectively referred to as the "Geese Police Marks."

GPI also owns and uses distinctive business methods in the operation of the Franchised Business.  Ex. 1, Verified Compl., ¶ 18.  These distinctive business methods, together with the other benefits of being a franchisee, including use of the Geese Police Marks, are referred to as the "Geese Police System."  As part of the Geese Police System, GPI provides its franchisees with training in its methods of doing business and with the experience, expertise, and know-how of the Franchisor in the operation of the Franchised Business (the "Geese Police Trade Secrets") to help them succeed with their own businesses.  *Id.*, ¶¶ 19, 20.

Since it began franchising in 1998, GPI has licensed the Geese Police Marks to its franchisees for use in specific geographic areas for the term of their franchise.  *Id.*, ¶ 21.  Franchisor also grants its franchisees the right to enjoy the benefits of using the Geese Police System and Trade Secrets.  *Id.*, ¶ 21.  Franchisees are not, however, authorized to use the Geese Police Marks, the Geese Police System, or the Geese Police Trade Secrets following the termination of their franchises.  *Id.*, ¶ 22.

GPI has for many years spent large sums of money marketing and promoting the Geese Police Marks that have become identified with the Franchised Business by consumers and which use specially developed business methods. *Id.*, ¶ 23. The Franchised Business has been the subject of significant national media coverage including by NBC News, Washington Post and Washington Times. Ex. 6, Rapsys Ex. 15, GPI-0011563 at -172; Ex. 7, Vid Dep. Tr. at 87:9-88:2. As a result of this extensive marketing and promotion, valuable goodwill has been developed in the franchised areas throughout the United States among consumers for the Geese Police Marks and the System, identifying Franchisor as their sponsor and source.

**B.   Defendants Become a Franchisee and Agree to be Bound by a Franchise Agreement**

In 1998, Rapsys started as GPI's first Geese Police franchisee. Ex. 7, Vid Dep. Tr. at 15:25-16:15. Vid, as the Owner of Rapsys, executed a Franchise Agreement on behalf of Rapsys on or about February 13, 2009. Ex. 8, Rapsys 30(b)(6) Dep. Ex. 1, GPI-0012294; Ex. 9, Rapsys 30(b)(6) Dep. Tr. at 17:19-18:8. GPI entered into a five-year extension of the Franchise Agreement with Rapsys on or about March 30, 2014. Ex. 10, Rapsys 30(b)(6) Dep. Ex. 28, GPI-0012271; Ex. 9, Rapsys 30(b)(6) Dep. Tr. at 21:3-21:8. This February 13, 2009 Franchise

Agreement and March 30, 2014 addendum (collectively, the "Franchise Agreement"), governed the parties' relationship during the relevant time.[2]

Under the Franchise Agreement, GPI granted Defendants the right to operate a Franchised Business within the Geese Police System and to use the Geese Police Marks. Ex. 8, Rapsys 30(b)(6) Dep. Ex. 1, GPI-0012294 at – 298 (Section 1.1), - 300 (Section 2.1). In exchange, Rapsys agreed to pay a monthly royalty fee. *Id.* at -302 (Sections 4.1 & 4.3). Defendants further agreed to cease operating the Franchised Business and using the Geese Police Marks upon termination. Ex. 8, Rapsys 30(b)(6) Dep. Ex. 1, GPI-0012294 at – 318 (Section 15), -320 (Section 16).

As an inducement to GPI to execute the Franchise Agreement, Vid also personally guaranteed that the obligations of Rapsys under the Franchise Agreement would be performed, and acknowledged and agreed, among other things, to be bound individually by the franchisee's obligations upon termination and to the covenant not to compete (the "Guarantee"). Ex. 8, Rapsys 30(b)(6) Dep. Ex. 1, GPI-0012294 at - 336; Ex. 7, Vid Dep. Tr. at 22:21-25:16. Defendants further agreed to all other provisions of the Franchise Agreement, including the obligation to cease operating

---

[2] Vid, as the Owner of Rapsys, also executed an Addendum to the 2009 Agreement, in which he negotiated preferred payment terms to lower his monthly royalty rate. Ex. 11, Rapsys Dep. Ex. 30, GPI-0012263; Ex. 9, Rapsys 30(b)(6) Dep. Tr. at 29:17-31:10. Other franchisees of GPI, do not have a similar term in their agreements with Franchisor. Ex. 12, Decl. of J. Brown, ¶ 13.

the Franchised Business and to cease using the Geese Police System and Geese Police Marks upon termination of the Franchise Agreement.  *See id.*; *see also* Ex. 8, Rapsys 30(b)(6) Dep. Ex. 1, GPI-0012294 at – 318 (Section 15), -320 (Section 16).

### C.    Defendants Received the Benefits of a Franchisee While Operating as Geese Police of Naperville for Decades

With the consent of GPI and under the terms and conditions of the Franchise Agreement, Defendants operated a successful Franchised Business in the Illinois - North of Bloomington area (the "Protected Territory") for twenty-four years.  During that period, GPI provided, or made available, to Defendants initial and ongoing training; trained border collies; a Confidential Operating Manual; and operations and business support via direct telephone and email contact with GPI's Founder and President David C. Marcks.  Ex. 7, Vid Dep. Tr. at 20:2-20:10; 36:12-36:20; 50:9-50:18.  GPI also routinely referred potential customers to Defendants from 2002 through 2022, and held multiple conferences for its franchisees, which Vid attended. *Id*. at 88:11-97:1; 97:23-98:6.

Defendants did not have any prior experience in the operation of Canadian goose/bird control business using highly trained working border collies before becoming an authorized franchisee of Franchisor, so GPI taught them to operate their franchise from the ground up.  *Id*. at 18:11-18:13.  GPI's founder personally worked with Vid to teach him the Geese Police methods and how to operate a successful business.  *Id.*  at 18:17-21:15, 26:9-32:17.  Over the course of their franchise

relationship, GPI provided Defendants with fully trained dogs, a detailed operations manual, ongoing business advice, templates for customer communications, and, critically, the benefit of GPI's well-respected brand and recognizable trademarks. *Id.* at 36:12-36:20, 50:9-50:13; 60:2-62:9; Ex. 9, Rapsys 30(b)(6) Dep. Tr. at 57:10-58:9, Ex. 8, Rapsys 30(b)(6) Dep. Ex. 1, at GPI-0012298 (Section 1.1). Defendants essentially learned everything they know about the Franchised Business as a result of their participation in the Geese Police System and the training, business development, and operations support that they received from Franchisor. Ex. 7, Vid Dep. Tr. at 32:12-32:17.

The Franchise Agreement naturally expired in February 2019. Ex. 10, Rapsys 30(b)(6) Dep. Ex. 28, GPI-0012271. Afterward, Defendants continued to act as a franchisee, with the parties taking no steps to end their franchise relationship. Ex. 9, Rapsys 30(b)(6) Dep. Tr. at 140:21-23 ("Q. Okay. Is that because you continued to act as a franchisee? A. Beyond 2019, yes."); *see also id.* at 58:5-60:3; 143:19-144:16; 147:24-148:13; 163:17-164:1 (testifying as to business-as-usual post-expiration).

### D. GPI Terminated the Franchise Agreement Because of Defendants' Numerous Defaults

On May 23, 2022, GPI notified Defendants that they were in default under the Franchise Agreement because they failed to pay the requisite royalty fees and to deliver reports and financial statements (the "Notice of Default"). Ex. 13, Verified

Compl., Ex. F.  As set forth in the Notice of Default, Defendants: (a) failed to make payment of the continuing royalty fees required under Section 4.3 of the Franchise Agreement and to deliver the reports required under Section 10.3 of the Franchise Agreement; (b) failed to deliver the reports and financial statements required under Section 10.3.1 of the Franchise Agreement; (c) failed to deliver the financial statements required under Section 10.3.2 of the Franchise Agreement; and (d) failed to deliver the insurance certificates required under Sections 12.3 and 12.4 of the Franchise Agreement.  *Id.*  In accordance with Section 14.3 of the Franchise Agreement, GPI provided Defendants with thirty days from receipt of the Notice of Default to cure the defaults listed therein and advised that, if such cure was not timely made, the Franchise Agreement would terminate immediately.  *Id.*

Defendants made no attempt to cure the defaults and thereby prevent termination of the Franchise Agreement, and in fact, admitted that GPI could not have even included the amount of royalties owed in its Notice of Default because they had not provided the necessary documentation, monthly sales reports, for GPI to make the calculation  *See* Ex. 7, Vid Dep. Tr. at 157:24-158:17 ("Q. So if the franchisee did not submit those reports, GPI would have no way of calculating the royalty fees, correct?  [Objection]  A. Correct.").  Vid has also conceded that he never attempted to pay the overdue royalties fees because, in his view, none were outstanding.  *Id.* at 161:15-22; *see also* Ex.9, Rapsys 30(b)(6) Dep. Tr. at 184:22-

185:8 (conceding that Rapsys paid no royalties to GPI for work performed in 2019, 2020, 2021, or 2022).

> **E.     Defendants Failed to Comply with the Franchise Agreement's Post-Termination Obligations**

GPI thus terminated its Franchise Agreement with Defendants by written notice dated June 24, 2022 (the "Termination Notice").  Ex. 1, Verified Complaint, ¶ 41.[3]  By the Termination Notice, Franchisor required Defendants to fully comply with their post-termination obligation set forth in Sections 15 and 16 of the Franchise Agreement and expressly enumerated in the Termination Notice.  *Id.*, ¶ 42.

Defendants have since admitted to violating many of their post-termination obligations, including the following:

- Defendants continued to hold themselves out as a GPI franchisee after the Franchise Agreement was terminated, Ex. 9, Rapsys 30(b)(6) Dep. Tr. at 119:14-119:21, 130:6-19; 157:7-157:10;

- Defendants continued to use methods, procedures and techniques associated with the System, and continued to use Geese Police in their advertising, *id.* at 130:6-130:19, 161:11-162:10, 173:20-177:20; Ex. 14, Rapsys 30(b)(6) Dep. Ex. 44;

- Defendants failed to change their assumed name within five days after termination of the Franchise Agreement and never provided formal notice of the name change to GPI, Ex. 9, Rapsys 30(b)(6) Dep. Tr. at 182:1-182:12;

---

[3] A copy of Termination Notice is not attached to this Complaint because it includes options under which the Franchisor may consider resolving this matter.  If necessary, GPI will provide this letter to the Court.

- Defendants maintained "Geese Police" as an active assumed name of Rapsys Inc. in July 2022, and kept it active through 2023, *id.* at 119:14-119:21;

- Defendants have continued to use the same phone number and did not assign it to GPI as contractually required, Ex. 7, Vid Dep. Tr. at 147:3-149:4; Ex. 9, Rapsys 30(b)(6) Dep. Tr. at 184:4-184:21;

- Defendants continued to use the Geese Police Marks post-termination and until at least April 2023 on their social media sites, *id.* at 130:6-130:19, 161:11-162:10, 173:20-177:20; Ex. 14, Rapsys 30(b)(6) Dep. Ex. 44;

- Defendants continued to enter into written agreements with and remitted invoices to customers as "Geese Police" on documents bearing the Geese Police Marks as late as June and July 2022, Ex. 9, Rapsys 30(b)(6) Dep. Tr. at 163:22-164:1, 169:3-169:7.

- Defendants failed to pay royalties for work performed from 2019-2022, *id.* at 184:22-185:8;

- Defendants failed to deliver their customer lists to GPI and to return GPI's operations manual, *id*. at 188:2-189:1; and

- Defendants never attempted to sell their dogs back to GPI or to return their Geese Police uniforms, *id.* at 189:2-189:13; 190:4-191:2.

These serial violations all constitute breaches of the Franchise Agreement, and in the case of their unlicensed use of the Geese Police Marks, federal trademark infringement and unfair competition under the Lanham Act.

## F. Defendants Failed to Comply with the Franchise Agreement's Covenant Not to Compete

Under Section 16.3 of the Franchise Agreement, upon termination of the Franchise Agreement, Defendants are barred, for a period of two (2) years, from either directly or indirectly owning, maintaining, operating, engaging in, being

employed by, providing assistance to, or having any interest in (as an owner or otherwise) any business that:

> (i) offers products or services which are the same as or similar to the products and services offered by the Franchised Business under the System; and (ii) is, or is intended to be, located at or within: [1] the county or municipality in which the Approved Location is located; or [2] the Protected Territory; or [3] one hundred fifty (150) miles of the Approved Location; or [4] one hundred fifty (150) miles of any business operating under the Proprietary Marks.

Ex. 8, Rapsys 30(b)(6) Dep. Ex. 1, GPI-0012294 at – 321.  As with their other post-termination obligations, Defendants have likewise breached this contractual term with impunity, again by their own admission, as they continue to operate a geese control business in the Protected Territory to this day, serving the same customers they served prior to 2019.  Ex. 7, Vid Dep. Tr. at 165:10-166:3.

## G.   Defendants Have Caused Customer Confusion and Led the Franchisee Revolt

Defendants' unlawful conduct has caused GPI irreparable harm.  Among other things, customer confusion has resulted from Defendants' use of the Geese Police Marks and continued operations in the Protected Territory.  Ex. 2, GPI 30(b)(6) Dep. Tr. (J. Brown) at 98:6-98:23; Ex. 9, Rapsys 30(b)(6) Dep. Tr. at 206:3-207:19.  GPI has also been unable to service its customers in the Protected Territory, given Defendants' continued operations there.  *See* Ex. 12, Brown Decl., ¶ 14; Ex. 15, Cottrell Decl.

11

Defendants have likewise caused a loss of confidence in other franchisees and otherwise threatened the viability of the franchise system. With Vid as their leader, no less than three other franchisees have revolted against GPI, all espousing the same baseless legal theories to break their franchise agreements. *See* Ex. 9, Rapsys 30(b)(6) Dep. Tr. at 73:8-24, 74:5-22; 77:15-22. Again, this insurrection has forced GPI to file a federal lawsuit in the Eastern District of Virgnia against its former D.C. franchisee, a federal lawsuit in the District of Maryland against its former Boston franchisee, and an arbitration proceeding against its former Kansas City franchisee, plus another arbitration proceeding against Defendants to recoup past due royalties. *See* Ex. 16, E.D. Va. Dkt.; Ex. 17, D. Md. Dkt.; Ex. 18, JAMS Dkt. This has cost GPI hundreds of thousands of dollars, while Defendants sit back and mock GPI's demise. As these former franchisees joked with each other, "house of cards is falling fast." Ex. 19, RAPSYS000651. And they even went so far as to scheme about the financial toll that GPI would sustain, surmising that GPI "can't afford 5 lawsuits to keep this thing together." *Id.* As Vid admitted, others are watching this case to see "what's going to happen to me" and using this case as an example. *See* Ex. 9, Rapsys 30(b)(6) Dep. Tr. at 74:5-10; *see also id.* at 77:24-78:3.

### III.    STANDARD OF REVIEW

To warrant a permanent injunction, a plaintiff must show: "(1) that it has suffered an irreparable injury; (2) that the remedies available at law, such as

monetary damages, prove inadequate to compensate for that injury; (3) that the balance of hardships between the plaintiff and defendant favor equitable relief; and (4) that the public interest would not be disserved by a permanent injunction." *Chanel, Inc. v. Matos,* 133 F. Supp. 3d 678, 689 (D.N.J. 2015) (citation omitted).

## IV.    ARGUMENT

### A.    GPI is Entitled to a Permanent Injunction Prohibiting Defendants from Again Using the Geese Police Marks

The Court should grant GPI's motion for a permanent injunction prohibiting Defendants' from again using Geese Police Marks because Plaintiff has established trademark and service mark infringement, as well as unfair competition under the Lanham Act.  As a result of Defendants' unlawful conduct, Plaintiff has, and will continue to, suffer irreparable harm, which monetary damages are insufficient to remedy.  The balance of the equities in granting an injunction weigh in GPI's favor, and it is in the public interest to preclude Defendants from further violating the law.

### 1.    Defendants Committed Trademark and Service Mark Infringement and Engaged in Unfair Competition

Federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), "are measured by identical standards." *Dunkin Donuts, Inc. v. All Madina Corp.*, No. CIV.A. 04-1399(JAG), 2006 WL 842403, at *3 (D.N.J. Mar. 28, 2006) (citing *A & H Sportswear Co. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 202 n. 5 (3d Cir. 1999)).  As a general rule, "the same facts which support an action for trademark infringement, such as facts

13

indicating likelihood of confusion, will support an action for unfair competition under Section 43(a) of the Lanham Act." *Id.* (citing *Armstrong Paint & Varnish Works v. Nu-Enamel Corp.*, 305 U.S. 315, 325 (1938)).

For these claims, a plaintiff must show that "(1) their marks are valid and legally protectable; (2) they own the marks; and (3) defendants' use of their marks to identify goods or services is likely to create confusion concerning the origin of the goods or service." *Prime Hookah Inc. v. FCM Online LLC*, No. 2:21-CV-13915 (WJM), 2022 WL 1115361, at *2 (D.N.J. Apr. 14, 2022) (citations omitted). Here, GPI has easily met these elements, as no dispute exists regarding the validity of the Geese Police Marks, Defendant' continued use of them post-termination, or the customer confusion that has resulted.

### (a)    GPI Has Shown Validity and Ownership of the Geese Police Marks

"The first two elements [of a Lanham Act claim] are satisfied by registration and ownership of the relevant trademarks." *Wyndham Hotels & Resorts, LLC v. Welcome Hotel Grp. LLC*, No. CV174065ESJAD, 2021 WL 1100610, at *6 (D.N.J. Mar. 23, 2021); *see also* 15 U.S.C. § 1057(b) (certificate of registration is prima facie evidence of validity of registered mark). Here, the Geese Police Marks have all been registered with the United States Patent and Trademark Office (USPTO) and licensed by GPI for use in the Franchised Business. Exs. 3 – 5, Verified Complaint, Exs. A-C. Rapsys has conceded this as well. Ex. 9, Rapsys 30(b)(6)

Dep. Tr. at 143:5-143:7; 144:2-143:9; 144:19-145:3. No dispute therefore exists as to the ownership and validity of the marks.

> **(b)    GPI Has Shown Confusion Through Defendants' Use of the Geese Police Marks**

GPI likewise satisfies the third element, likelihood of confusion, through its former franchisee's use of its exact marks. While the Third Circuit has established ten non-exhaustive factors when analyzing likelihood of confusion, *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983), it has also held that "likelihood of confusion is inevitable, when, as in this case, the identical mark is used concurrently by unrelated entities," *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990). This Court has likewise explained that it "need not conduct a detailed analysis under each *Lapp* factor" so long as the plaintiff demonstrates that, "based on [Defendants'] failure to remove the [at-issue] Marks after termination of the [Franchise] Agreement, the allegedly infringed marks are Plaintiff's exact marks." *Wyndham Hotels & Resorts*, 2021 WL 1100610, at *6.

Here, again, no dispute exists regarding Defendants' continued use of the Geese Police Marks post-termination. Vid himself admitted that he continued to enter into written agreements with and remit invoices to customers as "Geese Police" on documents bearing the Geese Police Marks as late as June and July 2022, Ex. 9, Rapsys 30(b)(6) Dep. Tr. at 163:22-164:1, 169:3-169:7, and that he continued to display Geese Police Marks on his social media pages after June 24, 2022. Ex. 9,

Rapsys 30(b)(6) Dep. Tr., at 163:22-164:1, 169:3-169:7.  In fact, the Geese Police

Marks were still displayed on Rapsys's Facebook page as of April 27, 2023.  *Id.* at

173:20-177:20; Ex. 14, Rapsys 30(b)(6) Dep. Ex. 44.  Finally, Vid continued to

represent himself as President of Geese Police as of April 5, 2023.  Ex. 9, Rapsys

30(b)(6) Dep. Tr., at 178:22-181:3; Ex. 20, Rapsys Dep Ex. 45.[4]

> ### 2.    GPI Meets the Requirements for a Permanent Injunction to Enjoin Defendants from Further Violations of the Lanham Act

The Lanham Act provides for injunctive relief, 15 U.S.C. § 1116(a), and a

permanent injunction "is ordinarily granted upon a finding of trademark

infringement," *Matos*, 133 F. Supp. 3d at 689 (quoting *Lermer Germany GmbH v.

Lermer Corp.*, 94 F.3d 1575, 1577 (Fed. Cir. 1996)); s*ee also Piquante Brands

Intern., Ltd. v. Chloe Foods Corp.*, 2009 WL 1687484 , at *6 (D.N.J. June 16, 2009)

("Under the Lanham Act, an injunction is a 'usual and standard remedy.'") (citing J.

Thomas McCarthy, Trademarks & Unfair Competition § 30:1 (4th ed. 2006)).  GPI

has satisfied each prong of the permanent injunction analysis.

---

[4] Any claim of ignorance by Defendants regarding these posts would not be credible. In its July 28, 2022 filing, GPI identified multiple places on Defendants' social media pages where they displayed Geese Police marks.  *See* ECF No. 14. Notwithstanding such notice in July 2022, Defendants failed to remove the marks for at least nine additional months.

### (a)      GPI Has Suffered Irreparable Injury

Grounds for finding irreparable injury include "loss of control of reputation, loss of trade, and loss of good will." *Richardson v. Cascade Skating Rink*, No. CV 19-8935-NLH-MJS, 2022 WL 833319, at *4 (D.N.J. Mar. 21, 2022) (citation omitted). A finding of irreparable injury may "also be based on likely confusion." *Id.* Courts in this District have therefore found adequate grounds for irreparable harm based on confusion itself between a plaintiff's trademark and defendants' misuse because that "goes to the issues of [p]laintiff's reputation and others' good will, which can be otherwise virtually impossible to capture in terms of monetary relief." *Id.* at *5.

A finding of irreparable harm in this case is similarly warranted. Despite their post-termination obligations under the Franchise Agreement, Defendants have continued to operate in the Protected Territory, and they did so by trading on the reputation and goodwill of the Franchisor, including through its unauthorized use of the Geese Police Marks. This resulted in actual confusion. *See* Ex. 2, GPI 30(b)(6) Dep. Tr. (J. Brown) at 98:6-98:23 (testifying as to confusion by Illinois customers who associated Defendants with Geese Police post-termination); Ex. 9, Rapsys 30(b)(6) Dep. Tr. at 206:3-207:1 (testifying as to an Illinois customer who contacted Geese Police headquarters with a work request for Defendants in February 2023).

Defendants will no doubt say that they have since completely disassociated from the Franchised Business.   But their "cessation of infringing activities may represent no more than a tactical retreat" as Defendants created their new, cover-up logo only in response to a federal lawsuit.   *CrossFit, Inc. v. 2XR Fit Sys.*, *LLC*, 2014 WL 972158, at *10 (D.N.J. Mar. 11, 2014).  Absent a permanent injunction, nothing will stop Defendants from "resum[ing] infringing once they are no longer under the shadow of litigation."  *Id.*  GPI therefore has suffered—and will continue to suffer—irreparable harm absent a permanent injunction.

### (b)   Monetary Damages are Inadequate to Compensate for GPI's Injury

Monetary damages cannot adequately compensate GPI for Defendants' Lanham Act violations.   As courts in this District have explained, "harm to a [plaintiff's] trademarks cannot be remedied solely through monetary relief."  *Prime Hookah*, 2022 WL 1115361, at *2; *see also Audi AG*, 2019 WL 1951166, at *5 ("Loss of goodwill is 'often difficult to quantify,' therefore making money damages inadequate to compensate for such injury.") (citation omitted).

Critically, damages also cannot protect GPI from Defendants' future infringement.  *See ARCHforensic, LLC*, 2023 WL 2662584, at *5 ("While damages may compensate a plaintiff for injury already incurred, it will not protect against future infringement"); *see also Delta Air Lines, Inc. v. Fly Tech, LLC*, No. 16-2599, 2018 WL 1535231, at *5  (D.N.J. Mar. 29, 2018) ("A remedy at law will not be

18

adequate to compensate Delta for the injury to its reputation, nor will it necessarily prevent future trademark infringement."); *Am. Bridal*, 2017 WL 4154934, at *5, ("While damages can compensate a plaintiff for the injury incurred to this point, it will not protect against future infringement.") (citation omitted). If, for example, "Defendants were to resume the infringing activity, [GPI] would again face a threat to its reputation and goodwill," which cannot be compensated through monetary relief. *CrossFit, Inc.*, 2014 WL 972158, at *10. That is why "a plaintiff is not required to simply let the infringement continue, periodically refreshing its demand for damages; it may rightly demand that the infringement stop." *Id.* Monetary relief is therefore not enough to protect Plaintiffs' interests, marks, and integrity from infringement in the future, much less compensate it for past counterfeit activities.

### (c) The Balance of Hardships Favors GPI

The balance of hardships favors GPI because "the only hardship imposed upon the Defendant[s] [by an injunction] is that they obey the law." *ARCHforensic, LLC*, 2023 WL 2662584 at *7 (quoting *Malibu Media, LLC v. Toshi Yamada*, 2019 WL 1586813, at *3 (D.N.J. Apr. 12, 2019)); *see also AAMCO Transmissions, Inc. v. Dunlap*, 646 F. App'x 182, 184 (3d Cir. 2016) ("[A] permanent injunction in this case would merely prohibit [Defendants] from engaging in an activity to which [they] have no legal right."); *Can't Live Without It, LLC v. Closeout Surplus & Salvage, Inc.*, No. 18-14606, 2021 WL 1345869, at *7 (D.N.J. Apr. 9, 2021)

19

("Defendants will not be unduly burdened by the issuance of an injunction. In fact, the only 'hardship' to Defendants is that they will be refrained from engaging in continuous unlawful conduct."). In short, "the balance of hardships weighs strongly in favor of an injunction where all that is requested is that Defendant comply with the law and abstain from infringing." *Richardson*, 2022 WL 833319, at *5; *see also Am. Home Prod. Corp. v. Johnson Chem. Co.*, 589 F.2d 103, 107 (2d Cir. 1978) ("[O]ne who adopts the mark of another for similar goods acts at his own peril.").

Defendants cannot claim that they will suffer an undue hardship because they have no legal right to use Geese Police Marks. GPI, by contrast, has demonstrated that it has and will continue to suffer significant harm absent permanent injunctive relief. Accordingly, the balance of the equities solidly favors GPI.

### (d)   The Public Interest Would Not Be Disserved by a Permanent Injunction

Finally, "the Third Circuit specifically recognizes a prevailing public interest in favor of protecting from the erosion of the trademark holder's property interests and avoiding public confusion." *Am. Bridal & Prom Indus. Ass'n v. 2016dressforprom.Com*, Civ. No. 16-08272, 2017 WL 4154934, at *5 (citing *Bill Blass, Ltd. v. SAZ Corp.*, 751 F.2d 152, 156 (3d Cir. 1984)). The public interest is actually served, then, by granting GPI a permanent injunction. *See id.* ("[G]ranting Plaintiffs request for a permanent injunction for the alleged Lanham Act and Trademark violations will not in any way disserve the public interest."); *Delta Air*

*Lines, Inc.*, 2018 WL 1535231, at *5 ("I]ssuing an injunction furthers the public's interest in both the protection of trademark and in the avoidance of consumer confusion."); *Cosmetic Warriors Ltd. v. Nailush LLC*, No. 17-1475 (RBK/JS), 2017 WL 5157390, at *8 (D.N.J. Nov. 6, 2017) ("[T]he public has an interest in trademark protection so that the public interest will not be disserved by issuing a permanent injunction that protects a trademark from infringement."). This element is satisfied.

### B.   GPI Is Entitled to a Permanent Injunction Enforcing the Franchise Agreement's Restrictive Covenant and Remaining Post-Termination Obligations

The Court should also grant GPI a permanent injunction enforcing the Franchise Agreement's covenant not to compete and its post-termination obligations because GPI has established that Defendants have refused to comply with Section 15 and 16 of the Franchise Agreement and will continue to do so absent relief. Again, GPI easily satisfies the necessary elements for an injunction to issue.

### 1.   Defendants Have Breached the Franchise Agreement

New Jersey law applies under the Franchise Agreement, and in this state, to prove a breach of contract, the plaintiff must show that (1) "the parties entered into a contract containing certain terms"; (2) "plaintiffs did what the contract required them to do"; (3) "defendants did not do what the contract required them to do, defined as a breach of the contract"; and (4) "defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs." *Goldfarb v. Solimine*,

245 A.3d 570, 577 (N.J. 2021) (internal quotations and citation omitted).  GPI has

met each of these elements to win on the merits.

### (a)    Defendants Breached the Franchise Agreement's Restrictive Covenant

No real dispute exists that Defendants breached the Franchise Agreement's

restrictive covenant: following termination of the Franchise Agreement, Defendants

continued to operate a geese control business using trained border collies and serving

the same clients within their former Protected Territory.  Defendants will no doubt

take the narrow view that the natural expiration of the Franchise Agreement in

February 2019 excuses performance of their post-termination obligations (though

somehow still allowed them to use the Geese Police Marks, System, and Trade

Secrets while refusing to pay monthly royalties or submit financial reports).  But

their views are legally incorrect, and by their own admission, factually inaccurate.

### (i)    The Franchise Agreement remained a valid contract through May 2022

Where, as here, "a franchisee continues operation of the franchise after the

expiration of a franchise agreement, the parties will be found to have mutually

agreed to a new contract, with terms to be measured by the provisions of the previous

contract." 62B Am. Jur. 2d Private Franchise Contracts § 322 (citing *Gafnea v.*

*Pasquale Food Co., Inc*., 454 So. 2d 1366 (Ala. 1984) (holding that, by continued

operation of the franchise after the agreement expired, the parties mutually agreed

to a new contract with the same terms)).  Indeed, courts around the country routinely find implied-in-fact contracts where parties—after the natural expiration of a franchise agreement—continue with business-as-usual.  *See, e.g.*, *JTH Tax LLC v. Pierce*, 2022 WL 4122215, at *6 (N.D. Ga. Sept. 8, 2022) (finding implied-in-fact contract when franchisor did not immediately sue franchisee for unauthorized use of the marks while the franchisee continued to use the brand and pay for it); *Donut Holdings, Inc. v. Risberg*, 885 N.W.2d 670, 674 (Neb. 2016) (finding implied-in-fact contract when franchisee continued to use system and make royalty and advertising payments after expiration of written contract).[5]

AmeriSpec, LLC v. Omni Enters., Inc.* is particularly instructive.  2018 WL 2248459 (W.D. Tenn. May 16, 2018).  There, the court enforced a post-termination non-compete in an expired franchise agreement because the "parties continued to operate as if the contract remained in full force and effect."  *Id.* at *3.  The franchisee,

---

[5] This is consistent with New Jersey law and general principles of contract law.  *See Intelliga Commc'ns, Inc. v. Ferrari N. Am., Inc.*, No. CV 15-2315 (SRC), 2016 WL 916680, at *4 (D.N.J. Mar. 9, 2016) (observing that "[t]he legal effect of a contract implied in fact is identical to that of an express contract" and that "[p]arties' past practice and course of dealing can supply the terms of their agreement"); *In re Gingrich*, No. CIV.A. 09-1898 CCC, 2011 WL 6001347, at *4 (D.N.J. Nov. 30, 2011) ("[G]eneral principles of contract law teach us that when a contract lapses but the parties to the contract continue to act as if they are performing under a contract, the material terms of the prior contract will survive intact unless either one of the parties clearly and manifestly indicates, through words or through conduct, that it no longer wishes to continue to be bound thereby, or both parties mutually intend that the terms not survive.") (citation omitted).

for example, still used the franchisor's names and marks, training materials, email accounts, forms, and website. *Id.* at *2. This conduct lasted for nearly three years, without objection from the franchisor. *Id.* And, throughout, the franchise used the same phone number and address and serviced its customers under the franchisor's name in the same territory, until it opened a new business with the announcement: "New Name, Same Team! . . . ." *Id.* The court thus found that the franchisee accepted the benefits of being in the system and traded on the goodwill of the franchisor until it abruptly switched its name. *Id.* at *5. As the court reasoned, the franchisee took no affirmative steps "to effectuate the termination of the agreement, such as providing express notice," nor abided by the explicit post-termination obligations for the franchisee. *Id.* Ultimately, after finding that an implied-in-fact contract existed, the district court enforced the non-compete because the franchise "went from being a [franchisee] to operating a competing business overnight in violation of terms and conditions that they agreed to," which "threaten[ed] the entire franchise model and [the franchisor's] ability to find a willing candidate to open [another] franchise in [the former territory]." *Id.* at *7.

Defendant's' conduct following the Franchise Agreement's natural expiration in 2019 tracks this case law. Until the Termination Notice in mid-2022, they continued to act as a franchisee—by their own admission. Ex. 9, Rapsys 30(b)(6) Dep. Tr. at 140:21-23 ("Q. Okay. Is that because you continued to act as a

franchisee?  A.  Beyond 2019, yes.").  They still operated a geese control business as Geese Police of Naperville, used the border collies supplied to them and trained by the Franchisor, contracted with customers as Geese Police, serviced the same accounts, used the Geese Police Marks, and collected invoices as Geese Police.  *See id.* at 58:5-60:3; 143:19-144:16; 147:24-148:13; 163:17-164:1.  Defendants also used a Geese Police email address and website supplied to them by the Franchisor, *id.* at 167:4-168:10, as well as the same telephone number both before and after the franchise relationship expired, *id.* at 183:20-184:21.  As Defendants told their customers once they started the competing business: "I have an important announcement to make.  I'm officially now doing business as [K9] Goose Control.  Please update your contact information for me . . . **Nothing else has changed**.  Telephone, address, tax ID, great border collies all remain the same."  *Id.* at 129:18-130:5 (emphasis added).

Before this announcement, Defendants "never said that we were no longer a franchisee," nor ever claimed a default of the Franchise Agreement.  *Id.* at 140:16-141:7.  They also took no affirmative steps in February 2019 to leave the System, such as abiding by the restrictive covenant in the Franchise Agreement, disassociating from the Franchised Business, canceling its assumed name as Geese Police of Naperville, ceasing use of the Geese Police Marks, paying all sums due and owing, delivering their customer list, assigning their telephone number, or

returning the operations manual.  *See e.g.*, *id.* at 163:17-164:1; 183:20-184:21; 186:22-189:1.

In fact, the only change that occurred from February 2019 to June 24, 2022, by Defendants own admission, was their failure to remit monthly sales reports and make certain payments.  *Id.* at 149:2-4 (Q. "What did you do differently [after the contract expired] other than no longer sending in sales reports or pay royalties?  A. Nothing.").  But this was not unusual for Defendants: they were habitually late on remitting royalties to GPI, failing to make timely payments in every year since at least 2009.  *See* Ex. 7, Vid Dep. Tr. at 125:15-18 ("Q. So from 2009 to 2019, there was not a single year that you were fully up to date with your royalty payments, correct?  A. Correct.").  Even with their delinquent royalty payments, Defendants continued to pay past-due royalties post-expiration, as well as their life insurance payments, from December 2020 to June 2022.  *See* Ex. 9, Rapsys 30(b)(6) Dep. Tr. at 141:22-142:16.

In short, nothing really changed in the franchise relationship during this time, with Defendants still benefiting from the Franchise Agreement and GPI's goodwill for years.  They were no doubt a holdover franchisee, operating in the Geese Police System with an implied-in-fact contract.  This means that Defendants should remain bound by the same post-termination obligations as in the Franchise Agreement, including the restrictive covenant.  No legal or factual basis exists to find, as

26

Defendants have suggested, that the parties' relationship continued on different terms, let alone through an implied agreement that excused payment of royalties—particularly while they continued to use and profit from the goodwill and reputation that GPI built over decades.   In the end, Defendants' failure to abide by their contractual obligations constitutes a breach of the Franchise Agreement.

### (ii)    The Franchise Agreement's restrictive covenant is enforceable

"Under New Jersey law, where reasonable, covenants not to compete are valid and enforceable," and a restrictive covenant "will generally be enforced 'where it simply protects the legitimate interests of the employer, imposes no undue hardship on the employee, and is not injurious to the public.'"  *Lawn Doctor, Inc. v. Rizzo,* No. 12-1430 (TJB), 2012 WL 6156228, at *10 (D.N.J. Dec. 11, 2012) (quoting *Solari Indus., Inc. v. Malady*, 264 A.2d 53 (N.J. 1970)).  As this Court has explained, "noncompete covenants in franchise agreements are often viewed like agreements ancillary to the sale of a business in that the franchisee is in a more equitable bargaining situation than the typical employer-employee relationship." *Housemaster SPV LLC, v. John T. Burke, Jr*., No. CV2113411MASTJB, 2022 WL 2373874, at *6 (D.N.J. June 30, 2022) (Shipp, J.).  This means that courts "are more likely to find the covenants reasonable and valid" because "the primary characteristic of a franchise is the license given to the franchisee to trade upon and exploit the franchisor's good will." *Id.; see also Lawn Dr., Inc.*, 2012 WL 6156228,

at *10 ("[U]nlike restrictive covenants contained in the context of employment contracts, restrictive covenants in the franchise context are afforded additional latitude . . . " and "such covenants must be freely enforced") (quotation marks omitted).  Against this backdrop, district courts will find restrictive covenants in franchise agreements enforceable where, as here, the franchisee "signed the Franchise Agreement, operated the franchise business for nearly two decades, and raises no arguments that he was fraudulently induced into executing the agreement." *HouseMaster SPV LLC*, 2022 WL 2373874, at *6.  The Franchise Agreement's restrictive covenant therefore easily passes this test.

*First*, the restrictive covenant protects GPI's legitimate interest in maintaining its goodwill and customer relationships.  "Courts have consistently upheld goodwill and customer relationships as a legitimate business interest satisfying the first prong of the *Solari* test."  *Sandhills Glob., Inc. v. Garafola*, No. 19-20669, 2020 WL 7029482, at *10 (D.N.J. Nov. 30, 2020) (Shipp, J.) (citing *Arch Pers. Care Prod., L.P. v. Malmstrom*, 90 F. App'x 17, 21 (3d Cir. 2003)).  This is true even if the franchisor has never provided services within a former territory because, as one district court has explained, "that does not alter the fact that preventing the [franchisee] from operating such a business helps [the franchisor] protect its customer relationships and its good will."  *Lawn Dr., Inc.*, 2012 WL 6156228, at *11.  So, too, here: GPI "is not simply trying to enforce a restrictive covenant to

28

stife competition.  Instead, it is attempting to protect its good will and customer relationships, legitimate interests that it is entitled to protect." *Id.*

*Second*, enforcement of the restrictive covenant will not impose an undue hardship on Defendants, even if their "ability to earn a living providing [geese control] services . . . will certainly be impacted by the enforcement of the parties' restrictive covenant." *Id.*  Courts have therefore upheld restrictive covenants where, for example, the former franchisee was prohibited from providing services within 50 miles of a former territory or within any territory granted to another franchisee for a period of 18 months.  *See id.* at *11 (collecting cases upholding 2-year restrictions); *see also Sandhills Glob., Inc.*, 2020 WL 7029482, at *10.  The parties' 150-mile restriction for a 2-year period is likewise reasonable here.  By design, the restrictive covenant is to allow GPI to service its customers in the Protected Territory, and it remains ready and willing to do so once Defendants abide by the restrictions in their Franchise Agreement. Ex. 12, Brown Decl., ¶ 14; Ex. 15, Cottrell Decl., ¶¶ 4-5.  Further, as GPI has articulated in another dispute—also spawned by Vid's rebellion—GPI delineates the geographic scope of its restrictive covenants, including the 150-radius from an approved location, because of the nexus to the driving distance able to or typically covered by franchisees on their routes.  Ex. 21, Verified Complaint, *GPI v. Patriot Goose Control Inc.*, 1:23-cv-02360-GLR (D. Md. Filed Aug 29, 2023) at 17, n.2.

*Third*, no harm to the public interest will result from enforcing the covenant not to compete.  GPI is prepared to service its customers in the Protected Territory once the restrictive covenant is enforced.  Ex. 12, Brown Decl., ¶ 14; Ex. 15, Cottrell Decl., ¶¶ 4-5.  "As a result, there would be no injury to the public if the [Defendants] are made to abide by the terms of the restrictive covenant."  *Lawn Dr., Inc.*, 2012 WL 6156228, at *11.

### (iii)    Defendants breached the restrictive covenant

Section 16.3 of the Franchise Agreement precludes Defendants, for two years after termination, from operating a business that "offers products or services which are the same as or similar to the products and services offered by the Franchised Business," within the Protected Territory.  Ex. 8, Rapsys 30(b)(6) Dep. Ex. 1.  By their own admission, Defendants are in breach of this restrictive covenant:  they continue to operate a geese control business in the Protected Territory to this day, serving the same customers he served prior to 2019, in direct violation of Section 16.3.  Ex. 7, Vid Dep. Tr. at 165:10-166:3.  Defendants have also admitted that, even post-termination, they continue to have "many" active customer contracts that were entered into as Geese Police.  Ex. 9, Rapsys 30(b)(6) Dep. Tr. at 157:7-157:10.  And they have admitted to using the same phone number, the same address, the same tax ID, the same personnel, the same vehicles, and the same border collies as when he operated as Geese Police, *id.* at 130:6-130:19; as well as offering and performing the

same geese control services in the protected territory after June 24, 2022 and continuing to do so today, *id.* at 191:10-191:19.  Again, none of this is in dispute.

### (iv)    GPI suffered harm from the breach

Defendants' breach of the restrictive covenant has harmed GPI.  As this Court has explained in granting injunctive relief, irreparable harm results where, as here, a former franchisee still accessed customer lists and performed in and near his old territory for nearly a year after termination, which deteriorated the franchisor's goodwill, diverted customers away, caused customer confusion, and hindered its ability to refranchise the territory.  *Housemaster*, 2022 WL 2373874, at *6.  Harm also occurs where, as again here, a former franchisee opens a new business in the same location, threatening the franchise system as a whole because a "willful violation of the [Franchise] Agreement sends a message to other franchisees that the Agreement does not protect [the franchisor] and may be disregarded at will." *Quizno's Corp. v. Kampendahl*, No. 01 C 6433, 2002 WL 1012997, at *7 (N.D. Ill. May 20, 2002); *see also Bad Ass Coffee Co. of Hawaii v. JH Nterprises, L.L.C.*, 636 F. Supp. 2d 1237, 1249 (D. Utah 2009) ("If the non-compete clauses at issue are not upheld in this case, it would be reasonable to think that other BACH franchisees might be emboldened to follow in Defendants' footsteps.").

That sort of revolt is precisely what has occurred here, as GPI rightly predicted in moving for a preliminary injunction.  Ex. 12, Brown Decl., ¶ 14 ("If Defendants

are permitted to breach their covenant not to compete, this will establish a dangerous precedent and potentially encourage other franchisees to 'break away' and leave the Geese Police System and continue to operate their existing businesses under a different name at or near the location of their former Franchised Business."). Again, Vid has outright admitted that others are watching this case to see "what's going to happen to me" and using this case as an example—with no less than three other franchisees having since followed in Vid's footsteps and joined his campaign against GPI. *See* Ex. 9, Rapsys 30(b)(6) Dep. Tr. at 74:5-10; *see also id.* at 77:24-78:3. This has no doubt resulted in untold harm to GPI. A permanent injunction must issue to protect GPI.

### (b)    Defendants Breached Their Remaining Post-Termination Obligation

As with the restrictive covenant, no dispute exists regarding Defendants' breach of their post-termination obligations in Section 15 of the Agreement.

*First*, Section 15.1 required Defendants to "immediately cease to operate the Franchised Business" and to cease "directly or indirectly, represent[ing] to the public or hold[ing] itself out as a present or former franchisee of Franchisor." Defendants failed to comply with this obligation, as discussed above, because they openly admit that they continued to operate as Geese Police after July 2019. *See supra* §§ II.E, D.

*Second*, Section 15.2 required Defendants to "immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures, and

techniques associated with the System; and the Proprietary Mark 'Geese Police' and all other Proprietary Marks and distinctive forms" and to cease to use "all signs, advertising materials, displays, stationary, forms, products, and any other articles which display the Proprietary Marks."  Again, Defendants openly admitted that they continued to use methods, procedures and techniques associated with the System, and continued to use Geese Police Marks in their advertising.  *Id.*

*Third*, Section 15.3 required Defendants to "cancel any assumed name registration or equivalent registration obtained by Franchisee which contains the mark 'Geese Police' or any other Proprietary Marks," and to "furnish Franchisor with evidence satisfactory to Franchisor of compliance with this obligation within five (5) days after termination or expiration of this Agreement."  Defendants admit they did not change their assumed fictious name until 2023 and never provided formal notice to GPI.  *Id.*

*Fourth*, Section 15.4 required Defendants to modify or alter:

> the Premises of the Franchised Business (including, without limitation, the changing of, and the assigning to Franchisor of, the telephone number) and . . . any vehicles used in connection with the Franchised Business immediately upon termination or expiration of this Agreement as may be necessary to distinguish the appearance of the Premises and any such vehicles . . . from that of the premises and the vehicles of a franchised business under the System.

Once more, Defendants admit they continued to use the same phone number and never assigned the number to GPI.  *Id.*

*Fifth*, Section 15.5 prohibited Defendants from, in the operation of another business "us[ing] any reproduction, counterfeit, copy, or colorable imitation of the Proprietary Marks, either in connection with such other business or the promotion thereof, which. . . is likely to cause confusion, mistake, or deception, or which . . . is likely to dilute Franchisor's rights in and to the Proprietary Marks."  As discussed above, Defendants admitted to using the Geese Police Marks until June 2022, and they continued to display such marks until at least April 2023.  *Id.*

*Sixth*, Section 15.6 required Defendants to "promptly pay all sums owing to Franchisor and its affiliates."  Defendants admit they did not pay royalties for work performed from 2019-2022.  *Id.*

*Seventh*, Section 15.7 required Defendants "immediately deliver to Franchisor the customer lists relating to the Franchised Business, which are acknowledged to the be the property of Franchisor, and shall retain no copy or record of any such customer lists" and to "immediately deliver to Franchisor the Manual and all other records, correspondence, and instructions containing confidential information relating to the operation of the Franchised business and any copies thereof."  Defendants admit they failed to deliver his Geese Police customer lists to GPI, plus that they failed to return the operations manual received from GPI.  *Id.*

*Eighth*, Section 15.8 required Defendants to give Franchisor "the option . . . to purchase from Franchisee (1) any or all of the dogs and vehicles used by the

Franchised Business and any or all of the equipment and signs related to the operation of the Franchised business . . . and (2) any and all supplies and inventory of the Franchised Business . . . ." Defendants admit they never attempted to sell their dogs back to GPI LLC or to return their Geese Police uniforms. *Id.*

*Ninth*, Section 15.9 required Defendants to comply with the restrictive covenants contained in Section 16.3 of the Agreement, and as discussed above, Defendants failed to do so. *Id.* Accordingly, Defendants failed to comply with each of the Franchise Agreement's post-termination requirements.[6]

### 2. The Court Should Grant Plaintiff a Permanent Injunction Requiring Defendants to Comply with their Obligations Under Sections 15 and 16 of the Franchise Agreement

A permanent injunction against defendants is proper to enforce both Section 16's restrictive covenant and Section 15's various other post-termination covenants. *See Jackson Hewitt, Inc. v. Dupree-Roberts,* No. 13-00388., 2013 WL 4039021, at *8 (D.N.J. Aug. 7, 2013) (granting permanent injunction enforcing franchise agreement's covenant not to compete and post termination obligations, including requiring the franchisee to return all confidential information and client files, to transfer its phone number, and to return franchisor's equipment); *Jobconnection Servs., Inc. v. Munoz,* No. 2:13-3901, 2015 WL 3440842, at *3

---

[6] GPI is separately pursuing breach of Section 15.10 of the Agreement in an arbitration proceeding.

(D.N.J. May 28, 2015) (granting injunction enforcing restrictive covenants because plaintiff would not otherwise receive the benefit of its bargain and plaintiff did not delay in bringing motion or commit any related misconduct).

### (a)     Plaintiff Has Suffered Irreparable Injury

Plaintiff has suffered irreparable injury as a result of Defendants' breach of the covenant not to compete and post-termination obligations.

In blatant disregard of their obligations under the Franchise Agreement, Defendants have actively competed against GPI in the Protected Territory.  To make matters worse, Defendants have done so by trading on GPI's reputation and goodwill.  Absent injunctive relief, GPI will lose its ability to control and enforce the Franchised Business' operations, standards, and procedures in the Protected Territory.  This ultimately endangers the satisfaction and expectations of GPI's customers, and it dilutes the value of the franchises held by other franchisees.  Defendants' continued operation in the Protected Territory effectively precludes GPI from servicing that territory.  Such injuries have been found to constitute irreparable harm warranting the type of injunctive relief requested here. *Housemaster SPV LLC*, 2022 WL 2373874, at *6**.**

### (b)     Monetary Damages are Inadequate to Compensate for GPI's Injury

Monetary damages are inadequate to compensate for GPI's injury because Defendants' ongoing violations continue to cause customer confusion, divert

Plaintiff's customers, deplete Plaintiff's goodwill and preclude Plaintiff from servicing the Protected Territory.  None of this can be fully remedied through monetary compensation, as this Court has recognized elsewhere.  *See id.*

### (c)     The Balance of Hardships Favors GPI

The balance of hardships favors GPI.  Absent injunctive relief, GPI will suffer considerable hardship through continued injury to its goodwill, lost customers in the Protected Territory, and an inability to successfully service former region.  *Id.* Defendants, by contrast, only need to cease its operations within the Protected Territory and abstain from further use of the Geese Police Marks, Geese Police System, or the Geese Police Trade Secrets, as Defendants agreed upon in the Franchise Agreement.  This minimal harm that Defendants wrought on themselves (after warning) pales in comparison to the irreparable injury to Franchisor's ongoing loss of goodwill, and at any rate, the "harm which follows a defendant who willfully breaches a contractual undertaking is not a basis for denying a preliminary injunction." *Id.*  A permanent injunction should therefore issue for GPI to protect against continued breaches of their post-termination obligations, including the temporary prohibition against competition.

### (d)     The Public Interest Would Not be Disserved by a Permanent Injunction

There is public interest in enforcing legitimate and reasonable contractual clauses. *See id.*  This includes "enforcing legitimate and reasonable non-solicitation

clauses." *Menasha Packaging Co., LLC v. Pratt Indus., Inc.*, No. CV 17-0075, 2017 WL 639634, at *11 (D.N.J. Feb. 15, 2017).   Indeed, "there is a benefit to the enforcement of a valid covenant not to compete and encouraging people to adhere to contractual obligations." *Bad Ass Coffee Co. of Hawaii*, 636 F. Supp. 2d at 1249.

Accordingly, because GPI has demonstrated irreparable harm, that monetary damages are not sufficient to compensate for GPI's injury, that the balance of equities favors GPI, and that the public interest would be served by an injunction, this Court should grant GPI's request for a permanent injunction enforcing the Franchise Agreement's restrictive covenant and post-termination obligations.

> **3.    The Permanent Injunction Enforcing the Restrictive Covenant Should Run from the Date of Entry of the Injunction**

Enforcement of the restrictive covenant should run from the date of the entry of the permanent injunction.   Section 16.3 of the Franchise Agreement provides that the restrictive covenant runs for a continuous uninterrupted period of two (2) years commencing upon the date of any of the following:

> (a) a transfer permitted under Section 13 of this Agreement; (b) expiration of this Agreement; (c) termination of this Agreement (regardless of the cause for termination); (d) **a final order** of a duly authorized arbitrator, panel of arbitrators, or **a court of competent jurisdiction** (after all appeals have been taken) with respect to any of the foregoing or **with respect to enforcement of this Section 16**; or (e) any or all of the foregoing[.]

Ex. 8, Rapsys 30(b)(6) Dep. Ex. 1, GPI-0012294 at – 321 (emphasis added).  GPI built into the Franchise Agreement a tolling provision in the event that court action was required—as is the case here.

To date and following termination, Defendants have refused to comply with Section 16, thereby forcing GPI to initiate the present litigation.  GPI promptly filed this lawsuit and moved for a preliminary injunction in mid-July 2022, within just weeks of terminating the parties' Franchise Agreement on June 24.  And for the past fifteen months, Defendants have proceeded to ignore the restrictive covenant, while GPI awaits action by the Court on its preliminary injunction, which remains pending to this day.  Any permanent injunction should run from the date of its entry here.

Even if the absence of express contractual authority—which exists here—courts have the equitable authority to enforce a restrictive covenant beyond the franchise agreement's terms.  *See Jackson Hewitt, Inc. v. DJSG Utah Tax Serv., LLC,* 2013 WL 2459887, at *2 (D.N.J. June 6, 2013) ("This Court was justified in extending the injunction beyond the terms of the franchise agreement because Defendants, and those acting in concert with them, actively engaged in competition in violation of the franchise agreements and the Court's injunctions.")*; Jackson Hewitt Inc. v. Childress,* No. CIVA 06-CV-0909 DMC, 2008 WL 834386, at *10 (D.N.J. Mar. 27, 2008) (finding plaintiff "is entitled to injunctive relief for a period

of twenty-four months beginning from the date of [d]efendant's compliance with the covenant not to compete").

## V.   CONCLUSION

GPI respectfully asks the Court to grant its Motion for a Permanent Injunction, (1) enjoining Defendants from using Geese Police Marks, (2) enforcing the Franchise Agreement's covenant not to compete, and (3) enforcing the Franchise Agreement's post-termination obligations.

Date:  September 28, 2023          Respectfully submitted,

_s/ Melissa J. Bayly_
Melissa J. Bayly
Buchanan Ingersoll & Rooney PC
550 Broad Street, Suite 810
Newark, NJ 07102-4582
973 424 5604 (o)
melissa.bayly@bipc.com

Gretchen L. Jankowski
(*admitted pro hac vice*)
Matthew C. Pilsner
(*admitted pro hac vice*)
Buchanan Ingersoll & Rooney PC
Union Trust Building
501 Grant Street, Suite, 200
Pittsburgh, PA 15219

*Attorneys for Plaintiff GPI, LLC*

40

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the following counsel is being served

with a copy of this document via the Court's CM/ECF system on this 28th day of

September, 2023:

Evan M. Goldman
Greenspoon Marder LLP
One Riverfront Plaza
1037 Raymond Boulevard, Suite 900
Newark, New Jersey 07102
(732) 456-8728
evan.goldman@gmlaw.com

/s/ *s/ Melissa J. Bayly*
Melissa J. Bayly