# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| GPI, LLC,<br><br>        Plaintiff,<br><br>   v.<br><br>RAPSYS INCORPORATED d/b/a GEESE POLICE OF NAPERVILLE; and VIDMANTAS RAPSYS,<br><br>        Defendants. | Civil Action No. 3:22-cv-4585<br><br>Motion Day: November 20, 2023 |

## REPLY BRIEF IN SUPPORT OF PLAINTIFF GPI LLC'S MOTION FOR A PERMANENT INJUNCTION

Jacqueline M. Weyand
Melissa J. Bayly
Buchanan Ingersoll & Rooney PC
550 Broad Street, Suite 810
Newark, NJ 07102-4582
973 273 9800 (o)
jacqueline.weyand@bipc.com
melissa.bayly@bipc.com

Gretchen L. Jankowski
(*admitted pro hac vice*)
Matthew C. Pilsner
(*admitted pro hac vice*)
Buchanan Ingersoll & Rooney PC
Union Trust Building
501 Grant Street, Suite, 200
Pittsburgh, PA 15219

*Attorneys for Plaintiff GPI, LLC*

**TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................... 1

II. CORRECTIONS TO DEFENDANTS' STATEMENT OF FACTS .............. 2

    A. The Franchise Agreement's Actual Formation and Termination ......... 2

    B. The Fictitious Trademark Licensing Agreement .................................. 3

    C. Defendants' Superficial Attempt at Disassociation ............................. 5

    D. Defendants' Attempt to Destroy the Franchised Business ................... 6

    E. GPI's Ability to Service Its Customers in Illinois ............................... 7

    F. Defendants' Distortion of the JAMS Proceeding ................................ 8

III. ARGUMENT .............................................................................................. 8

    A. GPI's Motion is Procedurally Proper .................................................. 8

    B. GPI Has Suffered Irreparable Harm ..................................................... 9

        1. GPI Has Demonstrated Actual Confusion ................................. 9

        2. GPI Has Demonstrated Active Competition by Defendants ............................................................................... 10

    C. GPI Lacks Adequate Remedies at Law For the Claims in This Case ..................................................................................................... 11

    D. The Balance of Hardships Favor GPI ................................................ 12

    E. The Public Interest Would Not Be Disserved by Enforcing the Law ..................................................................................................... 13

    F. Defendants' Defenses Do Not Preclude Injunctive Relief ................. 15

IV. CONCLUSION ........................................................................................ 15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*AAMCO Transmissions, Inc. v. Dunlap*,
  646 F. App'x 182 (3d Cir. 2016) ................................................................... 12

*Am. Bridal & Prom Indus. Ass'n v. 2016dressforprom.Com*,
  2017 WL 4154934 ........................................................................................ 14

*ARCHforensic, LLC v. Arch Eng'g, LLC*,
  2023 WL 2662584 (D.N.J. Mar. 28, 2023) ................................................... 12

*Bill Blass, Ltd. v. SAZ Corp.*,
  751 F.2d 152 (3d Cir. 1984) ......................................................................... 14

*Can't Live Without It, LLC v. Closeout Surplus & Salvage, Inc.*,
  2021 WL 1345869 (D.N.J. Apr. 9, 2021) ..................................................... 12

*CrossFit, Inc. v. 2XR Fit Sys., LLC*,
  2014 WL 972158 (D.N.J. Mar. 11, 2014) ..................................................... 11

*Housemaster SPV LLC, v. John T. Burke, Jr.*,
  2022 WL 2373874 (D.N.J. June 30, 2022) ............................................. 11, 12

*Lawn Dr., Inc. v. Rizzo*,
  2012 WL 6156228 (D.N.J. Dec. 11, 2012) ................................................... 13

*Malibu Media, LLC v. Toshi Yamada*,
  2019 WL 1586813 (D.N.J. Apr. 12, 2019) ................................................... 12

*Menasha Packaging Co., LLC v. Pratt Indus., Inc.*,
  2017 WL 639634 (D.N.J. Feb. 15, 2017) ..................................................... 14

*Piscopo v. Pub. Serv. Elec. & Gas Co.*,
  2013 WL 5467112 (D.N.J. Sept. 27, 2013) .................................................. 14

*Richardson v. Cascade Skating Rink*,
  2022 WL 833319 (D.N.J. Mar. 21, 2022) ..................................................... 10

*Robredo v. Metro Honda*,
  2016 WL 8674620 (D.N.J. July 22, 2016) ................................................... 14

i

## I. INTRODUCTION

Defendants' response to GPI's Motion fails to refute that a permanent injunction is warranted. Aside from their self-serving revisionist history, Defendants cherry-pick selective facts from the record, often ignoring swaths of their sworn testimony when it does not fit their narrative. Defendants also sweep aside their own admissions regarding their status as a holdover franchisee and ignore the case law in this District that demonstrates GPI's position: Defendants remain bound by the Franchise Agreement, including the post-termination obligations that prohibit them from competing against GPI in their former Protected Territory.

Instead, Defendants claim the Motion is procedurally improper and GPI's recourse exists elsewhere. But this is incorrect. GPI filed this Motion in anticipation of a trial on the merits where GPI will prove that Defendants violated the law and breached their contract, entitling GPI to permanent injunctive relief.[1] As for the arbitration, that is an entirely separate action—with a single breach of contract claim to recover past-due royalties and liquidated damages. This Motion, by contrast, is properly before this Court and should be granted, as Defendants continue to flout their legal and contractual obligations to this day.

---

[1] Judge Bongiovanni suggested this very procedure at a recent conference, namely for GPI to move for a permanent injunction and concurrently request a hearing on the Motion. GPI followed that procedure, as shown in the attached email. *See* **Ex. 23**, Sept. 27, 2023 Email from G. Jankowski to M.J. Bongiovanni.

## II. CORRECTIONS TO DEFENDANTS' STATEMENT OF FACTS

Advocacy aside, Defendants' recitation of the facts is only loosely tied to the evidence established throughout discovery. As such, GPI sets forth herein the facts as they have been developed in the record.[2]

### A. The Franchise Agreement's Actual Formation and Termination

As with their now-withdrawn counterclaims, Defendants again assert that GPI presented the 2009 Franchise Agreement on a take-it-or-leave-it basis. Opp. at 3. Defendants' own deposition testimony, however, demonstrates that this is false. As Rapsys testified, Vid, as the Owner of Rapsys, also executed an Addendum to the 2009 Agreement, after negotiating preferred payment terms to lower his monthly royalty rate—without ever attempting to negotiate any other term in any iteration of the Franchise Agreement that existed since 1999. Mem. of Law ISO Motion ("Mem.") at 5, n.2; **Ex. 24**, Rapsys 30(b)(6) Dep. Tr. at 16:6-10 (1999 Agreement); 17:16-18 (2003 Agreement); 20:22-21:2 (2009 Agreement).[3] In short, the record evidence establishes that Defendants freely entered into the Franchise Agreement.

Defendants likewise take issue with the Notice of Default, arguing once more that the GPI "failed to state an amount for alleged past due royalties." Opp. at 3.

---

[2] Defendants draw many of their "facts" from Vid's pre-discovery Declaration, filed in opposing GPI's preliminary injunction motion and well before their depositions.

[3] All references to numbered exhibits continue the sequence of exhibits filed with and attached to GPI's Motion for Permanent Injunction.

Defendants have unsuccessfully raised this theory twice—once in their Counterclaims, which they have abandoned by voluntarily dismissing them with prejudice, ECF Nos. 46, 48; and again in the JAMS Arbitration Proceeding, where the Tribunal granted GPI's motion to dismiss a nearly identical counterclaim with prejudice, **Ex. 26**, Order Regarding Claimant's Motion. Distractions aside, Defendants fail to engage with the real issue in this case—their undisputed status as a holdover franchisee, which they themselves outright admitted under oath. *See* Mem. at 7 (quoting Ex. 9, Rapsys 30(b)(6) Dep. Tr. at 140:21-23 ("Q. Okay. Is that because you continued to act as a franchisee? A. Beyond 2019, yes.")).

> **B.    The Fictitious Trademark Licensing Agreement**

Despite admitting to being a holdover franchisee, Defendants now claim that the lack of a written renewal following the natural expiration of the Franchise Agreement in 2019 means that the parties' relationship automatically transformed into an "implied-in-fact license agreement." Opp. at 4. In support, Defendants rely on a fax allegedly sent to GPI's founder and then-owner, Dave Marcks, at his Florida residence in September 2021, as well as a similar correspondence sent via email to his widow and GPI's now-owner, Diane Marcks, in April 2022. But there are many flaws in Defendants' theory. First, Rapsys testified that no implied licensing agreement existed. **Ex. 24**, Rapsys 30(b)(6) Dep. Tr. at 201:5-7 ("Q. Would you also describe the trademark licensing agreement as aspirational? A. Since we never

3

entered into one, yes."). Second, Defendants have no proof that Mr. Marcks ever actually received the fax, *id.* at 151:2-152:15, nor any recollection of discussing the contents of the fax with him, **Ex. 26**, Vid Arb. Dep. Tr. at 160:1-9. And with respect to the email with Ms. Marcks, Mr. Rapsys simply stated: "[t]his is why I think we should come up a [*sic*] Trademark licensing agreement," with no substantive response from GPI. **Ex. 27**, GPI-0010507 at -08. Defendants' theory that an "implied license" was created, does not mean that such agreement ever existed, and the undisputed evidence in this case shows otherwise.

Defendants next take the position that "[they] did not treat the Franchise Agreement as renewed, and did not act if the Franchise Agreement was renewed." Opp. at 4. But this position is also belied by the record. In its Motion, GPI offers example after example how Defendants continued to act as a franchisee—by their own admission—until their termination in mid-2022. *See* Mem. at 24-27. Among other things, Defendants (i) still operated a geese control business as Geese Police of Naperville, (ii) used the border collies supplied to them and trained by the Franchisor, (iii) contracted with customers as Geese Police, (iv) serviced the same accounts, (v) used the Geese Police Marks, and (v) collected invoices as Geese Police. *Id.* at 24-25. Defendants also took no affirmative steps in 2019 to leave the System, *id.* at 25-26, nor ever said that "[they] were no longer a franchisee"—much less claimed a default of the Agreement, *id.* at 25. So nothing substantively changed

4

in the franchise relationship from 2019 until termination, making Defendants a holdover franchisee bound by the same post-termination obligations as in the Franchise Agreement, including the restrictive covenant. *Id.* at 25-26.

    **C.**    **Defendants' Superficial Attempt at Disassociation**

Defendants ask the Court to give them credit for using the Geese Police Marks in the open, public, and with GPI's knowledge" for "[n]early three years" before GPI terminated them for the Geese Police System, as if this doesn't prove GPI's point on their holdover status. Opp. at 5. They then claim that "[they] haven't used the [Geese Police Marks] since the day after this litigation was filed" and suggest that no confusion has occurred since then. Opp. at 2, 5. Again, this argument is not supported by the record. Defendants have since conceded that they continued to enter into written agreements with and remit invoices to customers as "Geese Police" on documents bearing the Geese Police Marks as late as June and July 2022. Mem. at 9-10. Rapsys also admitted to continuing to display Geese Police Marks on its social media pages as late as April 27, 2023. *Id.* Finally, Rapsys admitted that Vid continued to represent himself as President of Geese Police as of April 5, 2023. *Id.*

This infringement unquestionably resulted in actual confusion. Illinois customers continued to associate Defendants with Geese Police post-termination. Indeed, as recent as February 2023, an Illinois customer contacted Geese Police headquarters with a work request for Defendants. Mem. at 17. Despite alleging that

5

"[t]here is, quite literally, no evidence of actual or likelihood of confusion," Opp. at 6, the record evidence clearly demonstrates the opposite.

### D. Defendants' Attempt to Destroy the Franchised Business

Faced with these insurmountable facts, Defendants opt to smear Ms. Marcks, the widow of GPI's founder, "Cowboy Dave," in an attempt to justify their efforts to destroy the Franchised Business. Defendants resort to name calling, accusing Ms. Marcks of using these lawsuits to cause "pain and suffering," and blame her husband's untimely death as the motivating factor. Opp. at 7. But these allegations all ring hollow, and do not change the fact that Defendants have led the revolt against GPI, with their efforts threatening the very viability of the franchise system.

Defendants likewise spend pages attempting to show that GPI is somehow "no longer a functioning franchise system," simply because they are not in growth-mode at the moment (as they are, among other things, being forced to spend hundreds of thousands of dollars to defend the integrity of the franchise system that Defendants seem adamant to destroy). Despite Defendants' best efforts, GPI is a fully functional business.[4] GPI maintains nine active franchises throughout the

---

[4] In support of their theory, Defendants claim that the "Geese Police's 'system' is so inadequate and irrelevant that its founder's nephew . . . voluntarily relinquished ownership of same in or about July 2023." Opp. at 9. Yet the testimony that Defendants cite for this actually says that Mr. Neveras returned GPI to Ms. Marcks because he "felt like he could no longer handle the responsibility"—quite the opposite from the false narrative that Defendants tell this Court. *See* Brown Dep., (footnote continued)

6

eastern United States and provides them with the same support that Defendants received while participating in the Franchised Business—all of which are set forth at length in the Motion. *See, e.g.*, Mem. at 4-7.

### E. GPI's Ability to Service Its Customers in Illinois

Defendants next offer a series of excuses regarding their beliefs that GPI cannot enforce the restrictive covenant by focusing on GPI's lack of a franchisee, employees, real property, or vehicles in the State of Illinois. But Defendants conveniently ignore the evidence that GPI previously presented to this Court. As GPI's General Manager explained, "Franchisor remains ready and willing to service Defendants' customer accounts in the Protected Territory . . . but Defendants have successfully solicited away customers from Franchisor, impeding Franchisor from re-franchising in the Protected Territory or otherwise reentering that market." Decl. of J. Brown, ¶ 14, ECF No. 23. Another manager further explained that he "remain[s] willing to relocate to Illinois on behalf of Franchisor to service its customers in Illinois and will do so should Defendants cease their business operations and allow me the freedom to provide service to those customers." Decl., of J. Cottrell, ¶ 5, ECF No. 24. GPI is therefore quite capable of serving its customers in the State of Illinois once the restrictive covenant is enforced.

---

ECF No. 50-2 at 7:24-8:4. It was, after all, Mr. Neveras who Defendants schemed against from the moment that he owned GPI. Mem. at 12 (citing Ex. 19, RAPSYS000651).

7

### F.  Defendants' Distortion of the JAMS Proceeding

Finally, Defendants attack GPI for "fail[ing] to seek injunctive relief as part of the Arbitration Proceeding." Opp. at 10.  But this makes no sense.  As Defendants are aware, the Franchise Agreement provides for alternative dispute resolution—yet it also says that "[n]othing herein contained shall bar Franchisor" right to obtain injunctive relief against threatened conduct that will cause it loss or damage, under the usual equity rules, including the applicable rules for obtaining . . . preliminary injunctions." Franchise Agreement, ¶ 24.7.  Claims for monetary relief, by contrast, may proceed to binding arbitration before JAMS.  *Id.*, ¶ 24.4.

Further, the breach of contract claim that GPI brought against Defendants in the pending Arbitration Proceeding is solely to recover unpaid and past due royalties and liquidated damages due under the Franchise Agreement.  It has nothing to do with Defendants violations of his remaining post-termination obligations, including their failure to abide by the restrictive covenant, nor their violations of the Lanham Act.  Defendants' misguided attempt to fuse the two proceedings lacks merit.

### III.  ARGUMENT

### A.  GPI's Motion is Procedurally Proper

As an initial matter, GPI's Motion is procedurally proper.  GPI filed its Motion as instructed by the Court in anticipation of the Court scheduling a trial date to hear both the Motion and merits of the action.  **Ex. 23**.  As such, Defendants' argument

8

that a permanent injunction cannot be granted because a final adjudication has not yet occurred fails to consider the Court's instruction—or the fact that the Court will likely schedule a trial to determine the Motion and merits simultaneously. Further, while Defendants repeatedly call GPI's Motion a disguised summary judgment motion, they miss the point completely. GPI did not move for summary judgment on Defendants' counterclaims once granted leave because Defendants voluntarily dismissed them. This argument should be disregarded.

### B.  GPI Has Suffered Irreparable Harm

Even before a trial on the merits, GPI has already demonstrated that Defendants' actions have caused irreparable harm—on both the Lanham Act and breach of contract claims. *See* Mem. at 17-18. Defendants' arguments to the contrary are without any legal merit, and they otherwise lack record support.

#### 1.  GPI Has Demonstrated Actual Confusion

Defendants claim that GPI is unable to show irreparable harm on its Lanham Act claims based on a snippet of testimony from one of GPI's witnesses. But Defendants completely ignore other testimony and evidence submitted by GPI showing **actual** confusion in the Protected Territory. *See* Mem. at 17 (citing Ex. 2, GPI 30(b)(6) Dep. Tr. (J. Brown) at 98:6-98:23 (testifying as to confusion by Illinois customers who associated Defendants with Geese Police post-termination); Ex. 9, Rapsys 30(b)(6) Dep. Tr. at 206:3-207:1 (testifying as to an Illinois customer who


contacted Geese Police headquarters with a work request for Defendants in February 2023)). This sort of confusion, of course, causes irreparable harm because it "goes to the issues of [p]laintiff's reputation and others' good will, which can be otherwise virtually impossible to capture in terms of monetary relief." *Richardson v. Cascade Skating Rink*, 2022 WL 833319, at \*4 (D.N.J. Mar. 21, 2022). Defendants fail to address this case law. At any rate, GPI has not simply suffered a "speculative injury" as Defendants now claim in their response. Opp. at 17.

### 2. GPI Has Demonstrated Active Competition by Defendants

Defendants also fail to address the evidence of irreparable harm presented in the Motion regarding their ongoing breaches of the covenant not to compete and post-termination obligations. They instead narrowly focus on GPI's ability to sell franchises in the Protected Territory, ignoring GPI's uncontested evidence regarding its plan to service customers in the State of Illinois once the restrictive covenant is enforced under the Franchise Agreement. *See supra*, § II.E. At this point, however, Defendants continue to actively compete against GPI in the Protected Territory, effectively precluding GPI from servicing that territory.

Defendants' unlawful conduct has also resulted in GPI losing its ability to control and enforce the Franchised Business' operations, standards, and procedures in the Protected Territory. In fact, just weeks ago, an account serviced by Defendants contacted GPI to complain about how they were "[s]till having a lot of problems

with the service out here" and asked if their property was "still under contract with [Geese Police]." **Ex. 28**. It is clear that Defendants' accounts remain confused about Rapsys's association with GPI. Defendants' substandard service ultimately endangers the satisfaction and expectations of GPI's customers. This constitutes irreparable harm, warranting the type of injunctive relief requested here. *Housemaster SPV LLC, v. John T. Burke, Jr.*, 2022 WL 2373874, at \*\*6-8 (D.N.J. June 30, 2022) (Shipp, J.).

      **C.**    **GPI Lacks Adequate Remedies at Law For the Claims in This Case**

Defendants' entire argument regarding the adequacy of GPI's remedies turns on their claim that they have "de-branded." Opp. at 17. But they again miss the point: if "Defendants were to resume the infringing activity, [GPI] would again face a threat to its reputation and goodwill." *CrossFit, Inc. v. 2XR Fit Sys., LLC*, 2014 WL 972158, at \*10 (D.N.J. Mar. 11, 2014). That is why "a plaintiff is not required to simply let the infringement continue, periodically refreshing its demand for damages; it may rightly demand that the infringement stop." *Id.* Here, GPI cannot simply accept Defendants' word regarding disassociation, particularly when they continued to infringe on the Marks throughout the course of this litigation—even after GPI identified multiple examples of their unlawful activity in its Complaint and preliminary injunction filings. *See supra*, § II.C.

11

Monetary damages are equally inadequate to compensate for GPI for Defendants' ongoing violations of the restrictive covenant and post-termination obligations. This is because Defendants continue to cause customer confusion, divert Plaintiff's customers, deplete Plaintiff's goodwill, and preclude Plaintiff from servicing the Protected Territory. None of this can be fully remedied through monetary compensation. *Housemaster SPV LLC,* 2022 WL 2373874, at **6-8.

### D.     The Balance of Hardships Favor GPI

In arguing the equities, Defendants completely ignore the authority from this District cited in the Motion, that show the scales tip in GPI's favor. This case law demonstrates that the balance of hardships favors GPI because "the only hardship imposed upon the Defendant[s] [by an injunction] is that they obey the law." *ARCHforensic, LLC v. Arch Eng'g, LLC*, 2023 WL 2662584, at *7 (D.N.J. Mar. 28, 2023) (quoting *Malibu Media, LLC v. Toshi Yamada*, 2019 WL 1586813, at *3 (D.N.J. Apr. 12, 2019)); *see also AAMCO Transmissions, Inc. v. Dunlap*, 646 F. App'x 182, 184 (3d Cir. 2016) ("[A] permanent injunction in this case would merely prohibit [Defendants] from engaging in an activity to which [they] have no legal right."); *Can't Live Without It, LLC v. Closeout Surplus & Salvage, Inc.*, 2021 WL 1345869, at *7 (D.N.J. Apr. 9, 2021) ("Defendants will not be unduly burdened by the issuance of an injunction. In fact, the only 'hardship' to Defendants is that they will be refrained from engaging in continuous unlawful conduct."). Defendants'

12

misguided (and inaccurate) focus on GPI's franchising in the State of Illinois changes none of this. In the end, Defendants chose to act at their own peril, and they must now live with the consequences of their own actions, even if that means ceasing operations for two years—as they agreed to do in the Franchise Agreement. *See Lawn Dr., Inc. v. Rizzo*, 2012 WL 6156228, at *11 (D.N.J. Dec. 11, 2012) ("In addition, while the Rizzos' ability to earn a living providing lawn care services, including irrigation services, will certainly be impacted by the enforcement of the parties' restrictive covenant, the Court finds that said covenant does not impose an undue hardship on them.").

### E. The Public Interest Would Not Be Disserved by Enforcing the Law

Finally, Defendants argue that the public interest would be disserved here by enforcing the parties' agreement because, in their view, GPI's termination of the Franchise Agreement was invalid for failure to comply with Illinois law. This argument is astonishing, to say the least. In an eight-page Order, an Arbitral Tribunal has already outright rejected this claim, ruling that Defendants had no viable claim under the Illinois Franchise Disclosure Act when the Notice of Default did not state an amount of past due royalties. **Ex. 25 at 7**. In doing so, the Arbitral Tribunal held that the Act did not apply, and even if it did, the Notice of Default exceeded its requirements. *Id.* The Arbitral Tribunal also noted that GPI could not have provided this information in the Notice because Defendants failed to furnish the reports and

13

financial statements that would have been required to calculate the amount of past due royalties. *Id.* In light of this ruling, Defendants abandoned their Counterclaims in this case, voluntarily dismissing them with prejudice, in lieu of GPI moving for summary judgment on them.[5] Defendants' motives in raising this argument again in this proceeding is questionable, at best.

GPI has unquestionably satisfied this element for permanent injunctive relief. There is, after all, a significant public interest in enforcing a legitimate and reasonable contractual clause, including in "enforcing legitimate and reasonable non-solicitation clauses." *Menasha Packaging Co., LLC v. Pratt Indus., Inc.*, 2017 WL 639634, at *11 (D.N.J. Feb. 15, 2017). There is also a public interest in favor of protecting from the erosion of the trademark holder's property interests and avoiding public confusion." *Am. Bridal & Prom Indus. Ass'n v. 2016dressforprom.Com*, 2017 WL 4154934, at *5 (citing *Bill Blass, Ltd. v. SAZ Corp.*, 751 F.2d 152, 156 (3d Cir. 1984)). Tellingly, Defendants ignore this authority in their opposition.

---

[5] Courts in this District have repeatedly held that "[j]udicial proceedings ordinarily accord preclusive effect to arbitrations that have already adjudicated the same claims or defenses, even when the award is unconfirmed." *Robredo v. Metro Honda*, 2016 WL 8674620, at *4 (D.N.J. July 22, 2016). If necessary, GPI is prepared to fully brief how each of the "essential elements of adjudication" have been satisfied through the Arbitral Tribunal's Order. *Piscopo v. Pub. Serv. Elec. & Gas Co.*, 2013 WL 5467112, at *3 (D.N.J. Sept. 27, 2013).

### F.     Defendants' Defenses Do Not Preclude Injunctive Relief

In a last-ditch effort, Defendants make bold proclamations that "GPI acted in bad faith" and Defendants "acquiesced" to their unlawful conduct. Opp. at 20-21. This is baseless. The uncontested evidence shows that Defendants have duly admitted to being a holdover franchisee—bound by the same terms and conditions in their Franchise Agreement—as well as to violating their post-termination obligations. And as explained in the Motion, the only change that occurred from February 2019 to June 24, 2022, by Defendants own admission, was their failure to remit monthly sales reports and make certain payments. Mem. at 26 (citing Ex. 9, Rapsys 30(b)(6) Dep. Tr. at 149:2-4 (Q. "What did you do differently [after the contract expired] other than no longer sending in sales reports or pay royalties? A. Nothing.")). But this was not unusual for Defendants: they were habitually late on remitting royalties to GPI, failing to make timely payments in every year since at least 2009. *See id.* GPI will thus be able to show that it acted expeditiously and in good faith in terminating the Franchise Agreement and bringing this lawsuit.

### IV.     CONCLUSION

Based upon the foregoing, GPI respectfully requests a hearing on the merits, followed by the entry of a permanent injunction: (1) enjoining Defendants from using Geese Police Marks, (2) enforcing the Franchise Agreement's covenant not to compete, and (3) enforcing the Franchise Agreement's post-termination obligations.

15

Date:  November 13, 2023

Respectfully submitted,

*s/ Jacqueline M. Weyand*
Jacqueline M. Weyand
Melissa J. Bayly
Buchanan Ingersoll & Rooney PC
550 Broad Street, Suite 810
Newark, NJ 07102-4582
973 273 9800 (o)
jacqueline.weyand@bipc.com
melissa.bayly@bipc.com

Gretchen L. Jankowski
(*admitted pro hac vice*)
Matthew C. Pilsner
(*admitted pro hac vice*)
Buchanan Ingersoll & Rooney PC
Union Trust Building
501 Grant Street, Suite, 200
Pittsburgh, PA 15219

*Attorneys for Plaintiff GPI, LLC*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the following counsel is being served with a copy of this document via the Court's CM/ECF system on this 13th day of November, 2023:

Evan M. Goldman
Greenspoon Marder LLP
One Riverfront Plaza
1037 Raymond Boulevard, Suite 900
Newark, New Jersey 07102
(732) 456-8728
evan.goldman@gmlaw.com

/s/ Jacqueline M. Weyand
Jacqueline M. Weyand